The **NATIONAL PORK PRODUCERS COUNCIL and Wilson Foods Corporation, Plaintiff,**

v.

**UNITED STATES, Defendant,**

**Canadian Meat Council, et al., Defendants-Intervenors.**

**Court No. 85–09–01209.**

United States Court of International Trade.

May 28, 1987.

634

Thompson, Hine and Flory, Mark Roy Sandstrom and Kathryn A. Dobbs, Washington, D.C., for plaintiff.

Lyn M. Schlitt, Gen. Counsel, U.S. Intern. Trade Com'n, Randi S. Field, Washington, D.C., for defendant.

Arnold & Porter (Lawrence A. Schneider, Douglas A. Dworkin and David E. Green, Alan O. Sykes, Washington, D.C., of counsel), for defendants-intervenors.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Judge:

Plaintiffs bring an action under section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(ii) (Supp. III 1985) challenging the final negative injury determination by the United States International Trade Commission (Commission) in *Live Swine and Pork From Canada*, Inv. No. 701–TA–224, USITC pub. 1733 (1985). The Court has jurisdiction under 28 U.S.C. §§ 1581(c) and 2632(c) (1982). The Court holds that the challenged determination is supported by substantial evidence and in accordance with law.

### I. Background

The National Pork Producers Council (NPPC) representing domestic producers of live swine filed a petition with the Department of Commerce, International Trade Administration and the Commission seeking the imposition of countervailing duties on imports of live swine and fresh, chilled or frozen pork from Canada. The Wilson Foods Corporation later joined in the petition as a co-petitioner representing pork packers.

In its final determination, the Commission reversed a preliminary decision that

swine growers and unprocessed pork packers should be treated as a single industry in determining material injury. USITC pub. 1733 at 3–7; *see Live Swine and Pork From Canada,* Inv. No. 701–TA–224, USITC pub. 1625 (1984). The final determination held that live swine and fresh, chilled or frozen pork are two distinct products, that growers constitute the domestic industry producing live swine, and that only pork packers constitute the domestic industry producing fresh, chilled or frozen pork because there is not sufficient economic integration between swine growers and pork packers to justify including the growers in the domestic industry producing unprocessed pork. The Commission found that the domestic industry producing live swine is materially injured by reason of Canadian imports of live swine, but that the domestic industry producing unprocessed pork is not materially injured or threatened with material injury, and such industry is not materially retarded, by reason of imports from Canada of fresh, chilled or frozen pork. USITC pub. 1733 at 1–18.

Plaintiffs move pursuant to Rule 56.1 of the rules of this Court for judgment upon the agency record. The questions presented are (1) whether the Commission erred in its determination that the domestic unprocessed pork producing industry consists only of the domestic pork packers and does not include the domestic swine growers because of a lack of sufficient economic integration between swine growers and pork packers, (2) whether the finding of no material injury to a domestic pork producing industry, consisting solely of pork packers, by reason of Canadian imports of fresh, chilled or frozen pork is supported by substantial evidence and (3) whether the finding of no threat of material injury to such domestic pork producing industry by reason of Canadian pork imports is supported by substantial evidence.

## II. Discussion

### A. Determination of the Domestic Industry

In deciding whether to include swine growers within the domestic industry producing fresh, chilled or frozen pork, the Commission noted that in several prior agricultural investigations growers of a raw agricultural product and producers of a processed agricultural product were treated as a single industry when certain criteria were met:

> First, the Commission has considered the extent to which the raw product enters into a single line of production resulting in the processed product. Second, the Commission has examined the degree of economic integration between growers and packers, often looking at the legal relationship between the two groups. For example, if there is substantial interlocking ownership, if there are shared revenues, or if, contractually, the prices paid to producers directly control the prices to growers, then both groups can be more certainly affected in a like manner.

USITC pub. 1733 at 5–6.

Applying these factors in the live swine and pork investigation, the Commission concluded:

> Initially, we note that the "single, continuous line of production" standard has been met in that the raw product is primarily sold in only one market, and the primary purpose of raising slaughter hogs is to produce pork meat. The requisite integration of economic interest in this investigation, however, is lacking. Less than 5 percent of packing facilities are owned by the growers. Virtually none of the grower facilities are owned by packers. Further, the petitioners have conceded that the prices for hogs are not linked by contract to the prices received by the packers.

> While the absence of a legal relationship between growers and packers is not determinative of the absence of economic integration, we are unpersuaded by the petitioners' contention that an integration of economic interest can be reflected solely by a high price correlation between live swine and fresh, chilled, or frozen pork. We, therefore, cannot find that growers should be included into a

single industry with packers producing pork.

*Id.* at 6–7 (footnotes omitted).

Plaintiffs argue that the Commission's exclusion of the swine growers from the unprocessed pork industry on the basis that there is a lack of sufficient economic integration between swine growers and pork packers is contrary to congressional intent and claim that a finding of a single continuous line of production has been sufficient in prior Commission investigations for including growers of a raw agricultural product with the producers of the processed product when the processing added only minimal value to the processed product investigated. Plaintiffs assert alternatively that even if economic integration may be required, it was demonstrated in this case.

In reviewing final Commission determinations in countervailing duty investigations, the Court is directed by Congress to hold unlawful those determinations found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1982). As stated by our appellate court, "[a] reviewing court must accord substantial weight to an agency's interpretation of a statute it administers." *American Lamb Co. v. United States,* 4 Fed.Cir. ——, 785 F.2d 994, 1001 (Fed.Cir.1986) (citing *Zenith Radio Corp. v. United States,* 437 U.S. 443, 450–51, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)).

The initial issue raised by plaintiffs is whether the Commission violated congressional intent. In support of their argument that it did violate the intent of Congress, plaintiffs cite the Senate Finance Committee Report on the Trade Agreements Act of 1979 where the Committee stated:

> Because of the special nature of agriculture, including the cyclical nature of much of agriculture production, special problems exist in determining whether an agricultural industry is materially injured. For example, in the livestock sector, certain factors relating to the state of a particular industry within that sector may appear to indicate a favorable situation for that industry when in fact the opposite is true. Thus, gross sales and employment in the industry producing beef could be increasing at a time when economic loss is occurring, *i.e.,* cattle herds are being liquidated because prices make the maintenance of the herds unprofitable.

S.Rep. No. 249, 96th Cong., 1st Sess. 88, *reprinted in* 1979 U.S.Code Cong. & Admin.News 381, 474. Plaintiffs assert Congress intended through this example involving livestock that producers of the live animal be included in the industry producing unprocessed meat products from the animal, and argue that by requiring economic integration between swine growers and pork packers the Commission violated this clear congressional intent and erred as a matter of law.

Under the statutory framework provided by Congress, the Commission is directed in certain countervailing duty investigations to reach a final determination as to whether the domestic United States industry is materially injured by reason of foreign imports. *See* 19 U.S.C. § 1671d(b) (1982 & Supp. III 1985). In determining what constitutes the domestic industry in an investigation, the Commission is guided by certain statutory definitions. The term "industry" is defined as "the domestic producers as a whole of a like product, or those producers whose collective output of the like product constitutes a major proportion of the total domestic production of that product...." 19 U.S.C. § 1677(4)(A) (1982 Supp. III 1985). The term "like product" is defined as "a product which is like, or in the absence of like, most similar in characteristics and uses with, the article subject to an investigation." 19 U.S.C. § 1677(10) (1982). This statutory design does not prohibit the Commission from requiring economic integration before including swine growers in the industry producing unprocessed pork.

The passage from the Senate Finance Committee Report, furthermore, is not a clear expression of legislative intent that the growers of animals be included as part

of the domestic industry in an investigation of a product made from the animal. That passage appears in the Committee's discussion of what factors are to be considered by the Commission in making a determination as to whether an industry is materially injured and is intended to alert the Commission to be cautious in making its definition of the relevant industry so as to consider the special economic realities associated with agriculture. The warning and guid-. ance offered by the Committee "is a far cry from the promulgation of a general rule that in all cases the producers of agricultural raw products [including livestock] be joined with the industry producing the final product." *American Grape Growers v. United States,* 9 CIT ——, 604 F.Supp. 1245, 1247 (1985).

The Commission takes the position that under the statutory scheme for defining the relevant industry for investigation, and in light of the warning and guidance offered in the passage from the Senate Finance Committee Report, it acted properly in determining that the unprocessed pork producing industry includes only the pork packers and not the swine growers because of a lack of sufficient economic integration between the two. The Court holds that this position taken by the Commission in interpreting the statutory framework is reasonable and according to law.

Plaintiffs argue, however, that the Commission's determination is not in harmony with prior agricultural investigations in which the Commission found a single line of continuous production to be sufficient evidence to justify including growers of a raw product with the producers of a processed agricultural product when the processing added only minimal value to that processed product. In past agricultural investigations, according to plaintiffs, any evidence of economic integration was relied upon only as further proof that the domestic industry should be defined to include growers.

Defendant concedes that in the final determination in *Fish, Fresh, Chilled or Frozen, Whether or Not Whole, But Not Otherwise Prepared or Preserved From Can-* *ada,* Inv. No. 701–TA–40, USITC pub. 1066 (1980) the Commission found that fishermen and processors comprised the relevant domestic industry producing fillets solely on the ground that almost all of the fishermen's catch was converted to fillets. Defendant argues that since this first investigation involving agricultural products following the Trade Agreements Act of 1979, the Commission has required some finding of economic integration before including producers of the raw agricultural product in the industry with the processed product under investigation.

Upon review of prior Commission investigations involving agricultural products, the Court is not persuaded, as plaintiffs argue, that the Commission relied solely upon a requirement of a single continuous line of production in reaching its decision as to the relevant industry. In these other agricultural investigations there was evidence before the Commission concerning economic integration. *See, e.g., Lamb Meat From New Zealand,* Inv. No. 701–TA–80, USITC pub. 1191, 8–10 (1981); *Frozen Concentrated Orange Juice From Brazil,* Inv. No. 701–TA–184, USITC pub. 1283, 6–7 (1982); *Certain Red Raspberries from Canada,* Inv. No. 731–TA–196, USITC pub. 1565, 7–8 (1984).

Plaintiffs' claim that a single continuous line of production is sufficient in this investigation also depends upon its allegation that the processing of the raw agricultural product (swine) adds only minimal value to the investigated agricultural product (pork). In finding that live swine and unprocessed pork are two different products, the Commission listed a variety of distinguishing factors, including its conclusion that "[t]o be converted into pork, live swine must be subjected to the slaughtering process during which they are stunned, bled, scalded, dehaired, decapitated, and eviscerated. These packing operations add substantial value by transforming the live animal into pork." USITC pub. 1733 at 4. The Court finds this conclusion to be supported by substantial evidence, and thus plaintiffs' claim that the domestic industry producing unprocessed pork presents a special case for relying upon a single continu-

ous line of production as sufficient justification for including swine growers is without merit.

Plaintiffs alternatively contend that the Commission improperly focused upon the lack of legal relationships between swine growers and pork packers in reaching its determination that the requisite economic integration in this investigation is lacking. Plaintiffs argue that legal relationships such as interlocking ownership, shared revenues or contractual arrangements that make the price of the raw agricultural product contingent upon the price received for the processed product should not be preconditions to finding economic integration. According to plaintiffs, evidence on the record demonstrates a high price correlation between swine and pork prices sufficient to establish the required economic integration.

The Commission, however, recognized and acknowledged in reaching its determination that "the absence of a legal relationship between growers and packers is not determinative of the absence of economic integration." *Id.* at 7. The Commission found that there was not sufficient integration of economic interest between swine growers and pork packers to justify inclusion of the growers in the industry producing unprocessed pork. Part of the basis for this determination were its findings, on the record, that (1) "[l]ess than 5 percent of packing facilities are owned by growers;" (2) "[v]irtually none of the grower facilities are owned by packers;" and (3) "the petitioners have conceded that the prices for hogs are not linked by contract to the prices received by the packers." *Id.* at 6–7.

Regardless whether such findings alone would be sufficient to support this determination, evidence on the record also demonstrates that (1) growers benefit from high prices during shortage situations while packers benefit from low prices during oversupply situations; (2) packers compete for market share and need imported Canadian swine in order to fully utilize their existing capacity; (3) some packers wrote letters and sent telegrams in opposition to the NPPC petition and one packer testified in opposition at the Commission hearing; and (4) some packers further process pork into other products and need Canadian imports to ensure an adequate supply of pork. The Commission is deemed to have considered the entire record, regardless whether it lists all the reasons supporting its decisions. *See, e.g., Rhone Poulenc, S.A. v. United States,* 8 CIT 47, 55, 592 F.Supp. 1318, 1326 (1984); *Maine Potato Council v. United States,* 9 CIT ——, 613 F.Supp. 1237, 1245 (1985).

As to plaintiffs' argument concerning price correlation, the Commission noted that "[e]ven if this correlation were to exist at any one point in time, it could change for any number of reasons (*e.g.,* changes in non-hog costs of production for packers, pork marketing decisions, etc.)." USITC pub. 1733 at 7, n. 15.

■ The Court finds that substantial evidence on the record exists to support the Commission's determination that there is insufficient economic integration between swine growers and pork packers to justify including the growers with the packers. The Court holds the determination that swine growers are not producers of fresh, chilled or frozen pork and thus are not to be included in a material injury investigation of such pork industry because of a lack of sufficient economic integration is supported by substantial evidence and in accordance with law.

B. Material Injury Determination

Plaintiffs contend the Commission's decision that pork packers are not materially injured by imports of fresh, chilled or frozen pork is not supported by substantial evidence, asserting that the Commission underestimated evidence that imports of unprocessed pork from Canada have increased both absolutely and relative to domestic consumption and that the Commission ignored the price depressing effect of the Canadian imports and evidence of price undercutting and lost sales.

In making its determination whether the domestic industry has been materially injured by reason of imports, the statute

directs the Commission to consider among other factors:

> (i) the volume of imports of the merchandise which is the subject of the investigation,
>
> (ii) the effect of imports of that merchandise on prices in the United States for like products, and
>
> (iii) the impact of imports of such merchandise on domestic producers of like products.

19 U.S.C. § 1677(7)(B) (1982).

With respect to volume of imports, the statute further provides that "[i]n evaluating the volume of imports of merchandise, the Commission shall consider whether the volume of imports of the merchandise, or any increase in that volume, either in absolute terms or relative to production or consumption in the United States, is significant." 19 U.S.C. § 1677(7)(C)(i) (1982). In evaluating price impact, the Commission is directed by statute to consider whether: "(I) there has been significant price undercutting by the imported merchandise as compared with the price of like products of the United States, and (II) the effect of imports of such merchandise otherwise depresses prices to a significant degree or prevents price increases, which otherwise would have occurred, to a significant degree." 19 U.S.C. § 1677(7)(C)(ii) (1982).

Data relied upon by the Commission show that the absolute volume of imports of fresh, chilled or frozen pork from Canada increased from approximately 192 million pounds in 1981 to 269 million pounds in 1982, declining to 266 million pounds in 1983. The Canadian imports then rose to 345 million pounds in 1984 and increased to 108 million pounds in January–March 1985 as compared with 82 million pounds during the corresponding period in 1984. USITC pub. 1733 at 14.

The Commission was not persuaded that these increases were significant in part because it also found that the Canadian imports represented only 1.9% of the United States market in 1982, 1.7% in 1983, 2.2% in 1984, and 2.8% in January–March 1985. Also the Commission further found that "[t]he domestic industry retained virtually

97 percent of U.S. consumption." *Id.* at 14–15.

The Commission reviewed the pricing data and "found no discernible trends regarding the effect of the subject imports on U.S. prices of fresh, chilled, or frozen pork," stressing "that the price of U.S. pork generally rose at the same time that imports of fresh, chilled or frozen pork from Canada were increasing." *Id.* at 15. The Commission also stated that it found "only one instance of a confirmed lost sale" *Id.*, and one Commissioner voting in the majority also noted with respect to underselling that the only pattern of pricing indicated higher prices for the Canadian pork. *Id.* at n. 55.

■ In reviewing the Commission's findings, the Court is not authorized by Congress to substitute its judgment for that of the agency nor reweigh the evidence on the record, but rather must assess the evidence in order to find whether there is substantial support for the Commission's determination. *Corning Glass Works v. United States Int'l Trade Comm'n,* 799 F.2d 1559, 1568 (Fed.Cir.1986). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938), quoted in *Matsushita Electric Indus. Co. v. United States,* 750 F.2d 927, 933 (Fed.Cir.1984). The Court must consider the record as a whole, and evidence on the record which detracts from the substantiality of the evidence relied on by the agency in making its determinations must be considered. *See SSIH Equip. S.A. v. United States Int'l Trade Comm'n,* 718 F.2d 365, 382 (Fed.Cir.1983) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 488, 71 S.Ct. 456, 459, 464, 95 L.Ed. 456 (1951)).

Plaintiffs argue that evidence on the record demonstrates significant increases in the volume of Canadian imports and proof of the detrimental impact such imports have on United States pork prices. Supported by the view of the dissenting commissioner, plaintiffs further argue that

the low level of penetration by the Canadian imports into the domestic market should not be relied on as the sole justification for finding that the imports did not cause the material injury.

■ The Court finds after reviewing the record that there is substantial evidence to support the conclusions reached by the Commission as to the volume of imports and their effect on United States pork prices. Since the Commission made findings regarding price effect, underselling and lost sales, the Court is not persuaded that the Commission relied solely on the low level of penetration by the Canadian imports in determining that such imports did not cause injury to the domestic industry producing unprocessed pork. *Cf. USX Corp. v. United States*, 11 CIT ——, 655 F.Supp. 487 (1987) (finding the Commission improperly relied upon import penetration ratios in the investigation of the cold-rolled steel industry because it failed to discuss the impact of such ratios and the overall effect of import volume in relation to the trends in that industry). The Court holds the final determination that the domestic pork industry is not materially injured by reason of the Canadian imports of unprocessed pork is supported by substantial evidence in the record and in accordance with law.

C. Threat of Material Injury Determination

Finally plaintiffs challenge the Commission's determination that domestic pork producers are not threatened with material injury from Canadian pork imports. Relying upon the findings of the dissenting commissioner for support, plaintiffs claim they have proven that a threat exists by demonstrating that there is an excess of production in Canada over demand, that the United States is the primary market available for excess production, that most of the Canadian subsidy programs remained in effect, and that the level of swine and pork imports was already at an injurious stage.

Plaintiffs argue that there is also a great potential for product-shifting because the imposition of countervailing duties on live swine from Canada will result in decreased imports of live swine and increased imports of fresh, chilled or frozen pork. They say that Canada will be forced to make such a shift in order to dispose of swine that will be born and raised for slaughter, pointing to evidence of recent pork imports from Canada which allegedly indicates such increase has occurred.

The Commission is directed by statute to consider a number of economic factors in determining whether an industry is threatened with material injury by reason of imports, including the nature of the subsidy, the ability of the foreign producers to increase the level of exports to the United States and the likelihood they will do so, any rapid increase in penetration of the United States market by the imports, the probability that imports of the merchandise will enter the United States at prices that will have a depressing or suppressing effect on domestic prices of the merchandise, any substantial increases in inventories of imported merchandise in the United States, underutilized capacity for producing the merchandise in the exporting country, and the potential for product-shifting. *See* 19 U.S.C. § 1677(7)(F) (Supp. III 1985).

The Commission considered the statutory factors and articulated the reasons for its conclusions. *See* USITC pub. 1733 at 15–18. In particular the Commission recognized the possibility that the imposition of countervailing duties on Canadian live swine might result in an increase in Canadian pork imports, concluding:

A threat, however, must be "real" and "imminent." In this case, there are too many uncertain factors for us to speculate on the linkage between imports of the two products. For example, we note that live swine are being imported for slaughter by U.S. packers. the incentive for such packers to import the already slaughtered animal is, at best, marginal. The traditional importers of live swine, then, are not likely to be the new importers of unprocessed pork. Further, as a practical matter, the means for the shipment of live swine are not readily usua-

ble for the transport of unprocessed pork. Therefore, for substantial diversion to occur, new channels of transportation, distribution, and sales would have to be put into place. The statute does not permit us to speculate whether such developments will occur. A finding of threat is, therefore, too speculative for us to make at this time.

*Id.* at 18.

 Reviewing these findings under the standard of review discussed earlier, the Court finds that there is substantial evidence on the record to support the determinations made by the Commission regarding the statutory factors. *Cf. Yuasa-General Battery Corp. v. United States,* 11 CIT —, 661 F.Supp. 1214 (1987) (holding that the Commission is required to consider all statutory factors in determining threat of material injury and finding that it failed to in its investigation of Taiwanese motorcycle batteries). With respect to the issue of product-shifting, no argument is made that special circumstances justify an expansion or clarification of the administrative record as it existed before the agency. The Court will not consider evidence concerning recent pork imports from Canada compiled from new data collected after conclusion of the investigation. *See Nakajima All Co. v. United States,* 2 CIT 25 (1981). The Court holds the Commission's determination that there is no threat of material injury to the domestic industry producing unprocessed pork by reason of Canadian imports of fresh, chilled or frozen pork is supported by substantial evidence and in accordance with law.

## III. Conclusion

The Commission did not exceed its discretion in determining the relevant domestic industry for investigation by requiring a showing of economic integration as a prerequisite to determining whether swine growers should be included in the domestic industry producing unprocessed pork. The Commission's determination that swine growers are not part of the industry producing fresh, chilled or frozen pork because economic integration is lacking is supported by substantial evidence and in accordance with law.

The Commission's determinations that the domestic industry consisting only of pork packers is not materially injured nor threatened with material injury by reason of Canadian imports of fresh, chilled or frozen pork also are supported by substantial evidence and in accordance with law.

The action is dismissed. Judgment will be entered accordingly. So ordered.