**CITIZEN WATCH COMPANY, LTD., et al., Plaintiffs,**

v.

**UNITED STATES, Defendant.**

No. 88–01–00046.

United States Court of International Trade.

March 15, 1990.

384

Weil Gotshal & Manges (Stuart M. Rosen, A. Paul Victor, Randolph W. Tritell and Lisa J. Frank, New York City, of counsel), for plaintiffs.

Lyn M. Schlitt, Gen. Counsel, James A. Toupin, Asst. Gen. Counsel, Washington, D.C. (Craig L. McKee and Stephen A. McLaughlin, attorneys, Office of the Gen. Counsel), for defendant.

## MEMORANDUM OPINION AND ORDER

WATSON, Judge:

This is an action in which plaintiffs challenge the determination of the International Trade Commission ("Commission") not to exclude liquid crystal display televisions ("LCD TVs.") from the scope of an antidumping duty order. Liquid crystal display televisions employ a flat panel display in which liquid crystals are sandwiched between two sheets of glass and, when stimulated by a grid of transistors which has been applied to one of the glass plates, act as optical shutters to display moving images. The determination at issue here was made in *Liquid Crystal Display Television*

*Receivers From Japan,* Inv. No. 751–TA–14, USITC Pub. 2042 (December, 1987), 48 Fed.Reg. 48,583 (Dec. 23, 1987). It represented a decision by the Commission that the 1971 antidumping duty order issued against television sets from Japan as a result of its determination in *Television Receiving Sets from Japan,* TD 71–76, 36 Fed.Reg. 4576 (1971) should not be modified pursuant to the review procedures set out in 19 U.S.C. § 1675(b).[1] The antidumping order that was subject to review in this proceeding was issued on March 9, 1971 and covered all television receivers from Japan.

In its original investigation the Commission chose not to differentiate between television receivers on the basis of screen size or the technology used. For example, they drew no distinction between color and monochrome television receivers. In that determination, in subsequent investigations, as well as in reviews covering television receivers from Japan, the Commission has treated all television receivers as constituting a single like product. It has rejected arguments that differences in such factors as screen size, model types, tuning mechanisms, or style of cabinetry were sufficient to make certain television receivers other than like products. *See,* for example *Television Receiving Sets from Japan,* Inv. No. 751–TA–2, USITC Pub. 1153 (June, 1981) and *Color Television Receivers from the Republic of Korea and Taiwan,* Investigation Nos. 731–TA–134 and 135 (Final) USITC Pub. 1514 (April, 1984). In the first review investigation regarding television receivers from Japan, the Commission rejected an attempt to modify the antidumping order to exclude certain television receivers on the basis of their small screens. *Television Receiving Sets from Japan,* Investigations No. 751–TA–2, USITC Pub. 1153 at 19–20 (June 1981).

---

**1.** Whenever ... the Commission receives information concerning, or a request for the review of, ... an affirmative determination made under section ... 1673a ... of this title, which shows changed circumstances sufficient to warrant a review of such determination, it shall conduct such a review.... During an investigation by the Commission, the party seeking revocation of an antidumping or countervailing duty order shall have the burden of persuasion with respect to whether there are changed circumstances sufficient to warrant revocation of the antidumping or countervailing duty order.

The Commission has taken the position that although at the time of the original investigation and subsequently as well, the method of display in virtually all imported television receivers was by cathode ray tube ("CRT"), the variety of other display methods such as projection televisions, gas discharge display televisions, electro-luminescent display televisions, and the liquid crystal display televisions here at issue, are essentially the same product as that which was originally investigated.

In July of 1984, a producer of imported LCD televisions requested the Department of Commerce ("Commerce") to exclude LCD televisions from the scope of the outstanding order covering all television receivers from Japan. That request was based on a claim that LCD televisions do not contain a cathode ray tube and, due to their small screen size, do not compete with domestic televisions. In June of 1985 Commerce rejected that request and reasoned that because LCD televisions were capable of both receiving a broadcast signal and projecting a video image they were the same class or kind of merchandise as the television receivers which were within the scope of the finding. Commerce advised plaintiffs that a request founded upon an allegation that the domestic industry was not being injured by the importation of LCD televisions should be directed to the International Trade Commission.

On May 11, 1987, plaintiffs filed a *Request for Review of Changed Circumstances Warranting Modification of Antidumping Finding Respecting Monochrome and Color Television Receiving Sets from Japan to Exclude Liquid Display Televisions from the Scope Thereof.* This request alleged that changed circumstances existed in the fact that LCD TVs were a new product differing from CRTs in several respects, principally, in employing different technology and manufacturing processes, in having different physical characteristics, different uses, different marketing strategies, and different distribution channels and pricing.

Plaintiff's request for exclusion from the antidumping order was supported by several retailers of LCD televisions and opposed by a number of unions, namely, the Independent Radionic Workers of America, the International Brotherhood of Electrical Workers, the International Union of Electronic, Electrical, Technical, Salaried and Machinery Workers, AFL–CIO–CLC, and the Industrial Union Department, AFL–CIO. The Commission decided that it was appropriate to institute a review. At the conclusion of that review, the Commission determined that the changed circumstances alleged in the request for modification, namely, that LCD TVs constituted a separate like product from ordinary television receivers, did not in fact exist.

Plaintiffs argue that the Commission, by basing its determination on a review of the existence of changed circumstances, and by not proceeding to determine whether an industry in the United States would be injured in the statutorily defined manner by reason of imports of LCD TVs if the antidumping order were to be modified or revoked, failed to apply the proper legal standard in the review determination. Plaintiffs further argue that the determination was not supported by substantial evidence on the record, because it was made in the face of "overwhelming and unrebutted evidence" that modification of the order to exclude LCD TVs would not cause injury or threat of material injury.

The fundamental issue in this case is whether the Commission is compelled to enter into the question of injury when it undertakes a review or, whether it can revisit one of the premises or findings which set the review process in motion and then make a full blown decision on that premise or finding the determinant of the review. It does not appear that such an issue can arise in the ordinary case in which the premise for granting a review is nothing more than a preliminary form of the proposition which is ultimately to be proved, namely, that the importations under review are no longer likely to cause or threaten injury to a domestic industry. In other words, if the "changed circumstances" which are found sufficient to justify the review arise directly from develop-

ments touching on the injury formerly found and the prospect of future injury, then it would seem anomalous to allow the Commission to avoid going into a complete review of that subject. However, when the rationale for the conduct of the review is the commercial identity of the merchandise for which review is sought and the first question is whether or not the merchandise is a like product, that question is not simply a preliminary form of the ultimate injury question. Two lines of reasoning are possible. If the Commission's first conclusion is irrevocable then it must proceed to a full injury analysis. If, however, the first conclusion is only tentative and only a logical predicate to the conduct of a full review on the subject of injury, then the later elimination of the predicate can dispose of the review.

Plaintiffs argue that there are two distinct phases of the review proceedings, the first in which the Commission finds whether or not changed circumstances justify review, and the second phase in which the Commission must analyze the impact on a U.S. industry of revoking or modifying the order which is under review.

Plaintiffs' basic argument is that the Commission failed to go forward with the injury determination which it was required to make. In support of this argument plaintiffs contend that this was a violation of the statute, a contravention of the Commission's own regulations, and a departure from the Commission's own precedent established in previous investigations. Plaintiffs divide the review process into two phases, a first phase in which the requesting party must show "changed circumstances sufficient to warrant a review of such determination." 19 USC § 1675(b)(1); 19 CFR § 207.45(a); and a second phase in which the Commission is charged with determining the impact on a U.S. industry of revoking or modifying the order under review. Plaintiffs stress the Commission's regulations which provide in part that the Commission, in a review investigation, shall determine:

> whether an industry in the United States would be materially injured, or would be threatened with material injury, or the

establishment of an industry in the United States would be materially retarded, by reason of imports of the merchandise covered by ... the antidumping order if the order were to be modified or revoked.

19 C.F.R. § 207.45.

Plaintiffs stress that this standard of review and these phases of review have been considered applicable since the inception of reviews by the Commission. They specifically refer to such reviews as *Electric Golf Carts from Poland,* Inv. No. 751–TA–1, USITC Pub. 1069 (1980); *Drycleaning Machinery from the Federal Republic of Germany,* Inv. No. 751–TA–9, USITC Pub. 1617, (1984); *Frozen Concentrate Orange Juice from Brazil,* Inv. No. 751–TA–10, USITC Pub. 1623 (1984); *Salmon Gill Fish Netting of Man-made Fibers from Japan,* Inv. No. 751–TA–11, USITC Pub.1921 (1986), and *Bicycle Tires and Tubes from Taiwan and the Republic of Korea,* Inv. Nos. 751–TA–12 & 13, 52 Fed.Reg. 33,660 (1987).

Plaintiffs also rely on the well-established body of law that the determination of the ITC Commission cannot be sustained unless the Court is able to discern from the determination that the conclusions have been based on legally sufficient reasoning. *USX Corporation v. United States,* 12 CIT ——, 682 F.Supp. 60 (1988). Plaintiffs also refers to the body of law supporting the proposition that the Court will not allow the ITC to employ an impermissible standard of review. *See,* for example, *Armstrong Rubber Co. v. United States,* 12 CIT ——, 685 F.Supp. 252 (1988).

Finally, plaintiffs rely on the case law which has long held that an agency must follow its own regulations. *See,* for example, *United States v. Nixon,* 418 U.S. 683, 694–96, 94 S.Ct. 3090, 3100–02, 41 L.Ed.2d 1039 (1974). This principal has been applied by this Court in antidumping cases such as *Timken Co. v. United States,* 673 F.Supp. 495 (CIT 1987).

In response to plaintiffs' contentions, the Commission has made a number of arguments, all set against the leitmotif of the deference that must be given to the Com-

mission's exercise of discretion in its area of expertise.

The Commission argues strongly against the idea that the first phase of the review represents an irrevocable decision on the question of changed circumstances and compels the Commission to go on to a full review of the injury question. The Commission places particular emphasis on the plain language of the statute as amended in 1984. The Commission takes the view that under 19 U.S.C. § 1675, plaintiffs continue to hold the burden of persuasion that there are changed circumstances sufficient to warrant modification of the order to exclude LCD TVs from its scope throughout the course of the investigation.

The statutory language and the amendment to it are indeed of great importance. Originally, the language of § 1675 said nothing about the burdens of proof in the proceeding which followed the determination that changed circumstances were sufficient to warrant a review. In that period this Court saw the phases of the review process in somewhat the same light as plaintiffs do now. In other words, the Court sought to give the first phase of the process, namely, the determination that changed circumstances existed, a conclusory effect on the Commission. *See Matsushita Electric Industrial Co., Ltd. v. United States*, 6 CIT 25, 569 F.Supp. 853 (1983), *rev'd.* 750 F.2d 927 (Fed.Cir.1984). In that case this Court opined that once a party had satisfied the Commission in the first phase of the review that changed circumstances existed, that was sufficient to justify a full review and that party did not have a similar burden of proof in the remainder of the investigation, but rather it had only the burden of cooperating with the investigating agency. If the Commission could not establish the need to continue the injury determination then this Court felt that the initial finding of changed circumstances ought to lead to revocation of the antidumping duty order. Congress rejected this view very quickly, acting to amend the statute even before this Court's opinion was reversed on appeal in 750 F.2d 927, (Fed.Cir.1984). The statute was specifically amended to indicate a rejection of the

reasoning of this Court. The Conference Report to H.R. 3398 explained the 1984 amendment to § 751 as follows:

> [The revocation amendment] is intended to clarify the role of the ITC in review investigations under section 751 of the Tariff Act of 1930. In *Matsushita v. United States*, 569 F.Supp. 853 (CIT 1983), the court reviewed a decision of the ITC in *Television Receiving Sets from Japan*, Inv. No. 751–TA–2, USITC Pub. No. 153 (1981). The ITC had found that the domestic television industry would be threatened with material injury if the antidumping order on Japanese televisions were to be revoked. The court held that the ITC's review "failed to establish the continuing need for the injury determination", reasoning that "when the continued necessity for the antidumping duty is placed in question by a change in circumstances, the review required by section 751(b) must either find reason for continuation of the duty or lead to revocation."

> \* \* \* \* \* \*

> The Managers believe that the *Matsushita* decision incorrectly places the burden of persuasion on the domestic industry in section 751 review investigations.

> \* \* \* \* \* \*

> *The purpose of section 751 review investigations is to determine whether there are changed circumstances sufficient to warrant revocation of an antidumping order. The ITC must evaluate the changed circumstances alleged to determine whether revocation is appropriate in light of current factor and conditions of trade.*

H.R.Rep. No. 1156, 98th Cong., 2d Sess. 182 (1984) U.S.Code Cong.Admin.News 1984, p. 5299 (emphasis added).

■ From this rather specific and definite reaction of Congress and our appellate court it is possible to gather that attempts to give a conclusive and permanently binding effect to the preliminary or "first-phase" determinations of the Commission are not looked on with favor. For this reason it appears indisputable to the Court

that the basic issue of changed circumstances remains an open question during the full review. There are additional implications to plaintiffs' argument which make this result desirable. For example, plaintiffs' construction would give a sort of res judicata effect to facts determined in the preliminary phase of the review investigation even though those facts might have been determined primarily on a party's allegations and could not withstand fuller scrutiny.

■ In addition, there are certain subjects involved in preliminary findings, or implicit in them, which it would be anomalous to give a conclusive effect. For example, a Commission determination as to the composition of a domestic industry producing the like product pursuant to 19 U.S.C. § 1677(4)(A) in a preliminary affirmative determination should not, and does not, bind the Commission to reach the same like product finding in its final determination. *National Pork Producers Council v. United States*, 11 C.I.T. 398, 661 F.Supp. 633 (1987). Similarly, in *Oregon Steel Mills, Inc. v. United States*, 862 F.2d 1541 (Fed.Cir.1988) our appellate court held that the fact that the ITA had earlier found changed circumstances does not compel it to review the question of dumping when the lack of continued interest by the domestic industry gives it an independent basis for revocation of an outstanding antidumping order. That situation, in which a fundamental premise of the review is found to be missing by the agency, is highly analogous to the situation in this case. It would certainly seem to be a drastic and unjustifiable interference with the legitimate authority of an agency to curtail its power to examine the continued validity of the basic conditions on which its investigation depends.

In light of the relatively clear direction found in the statute, arguments based on the Commission's regulations have little importance. Even if those regulations were in some way to contradict the statutory directive, the Court would have to give primary and controlling weight to the statute. As it is, however, the Court does not find any particular contradictory or inconsistent expressions of authority in the regulations. 19 CFR § 207.45(a)(2) reads as follows, in part:

> Upon receipt of information concerning, or upon a request for a review of ... a determination which resulted in an order issued under the Antidumping Act, 1921, ... which shows changed circumstances sufficient to warrant a review of such determination, the Commission shall institute an investigation to determine ... (2) whether an industry in the United States would be materially injured, or would be threatened with material injury, or the establishment of an industry in the United States would be materially retarded, by reason of imports of the merchandise covered by the ... antidumping order if the order were to be modified or revoked.

19 C.F.R. § 207.45.

The most that can be said about this regulation is that it emphasizes the injury aspect of the review. It cannot be read as precluding the agency from considering and reviewing other fundamental subjects and premises of the review.

■ For these reasons the Court finds that the Commission was well within its authority to revisit the basic question of whether LCD TVs were, or were not, a product like that being produced by the domestic industry. This moves the focus of the dispute to the Commission's determination that the plaintiffs failed to carry the burden of persuasion that LCD TVs are a different product from the television receivers which were the subject of the 1971 antidumping duty order. It is important to note that in this proceeding plaintiffs did not allege to the Commission that there were any relevant changed circumstances concerning the effects that the class or kind of merchandise *as a whole* were having on the domestic industry as to which the Commission made its original determination. This means that the only way in which plaintiffs could obtain an exception from the antidumping order for their assertedly distinctive product was if those products do not belong in the group found

to have been injuring the single domestic television receiver industry.

 The Commission had previously found no clear dividing line between TV receivers on the basis of screen size or model variations. *Color Television Receivers from the Republic of Korea and Taiwan,* Inv. No. 731–TA–134 (1984). In dealing with the question of like product, the Commission has generally examined the factors which relate to the characteristics and uses of the subject merchandise. This includes physical appearance and uses, customer perception of the articles, common manufacturing facilities and production employees, and channels of distribution. *See,* for example, *Certain Forged Steel Crank Shafts from the Federal Republic of Germany and the United Kingdom,* Investigation Nos. 731–TA–351 and 353 (Final) USITC Pub. 2014 at 5 (Sept. 1987). The Court considers these factors to be reasonable and justifiable in analyzing the question of like products. *See, Associacion Colombiana de Exportadores de Flores v. United States,* 12 CIT ——, 693 F.Supp. 1165 (1988).

 In applying these factors there was substantial evidence in the record that the imported LCD TVs shared certain basic characteristics with all television receivers. These included the possession of a screen tuner, audio device, and electronic circuitry necessary to receive a signal. Secondly, and also of importance, is the fact that there is substantial evidence in the record that there is no distinct difference in use between LCD TVs and cathode ray TVs. The Commission's determination that in the mature television market of the United States, with primary demand being for replacement sets used in secondary positions in the household or in outdoor positions, the use of LCD TVs was likely to be the same as, or similar to, CRT TVs. In addition, the Commission had before it substantial evidence that retailers market and advertise both LCD TVs and CRT TVs together and that the channels of distribution for the LCD TVs do not vary greatly from those of CRT TVs.

Although there are certainly production differences between these types of television receivers, particularly in the production of the display devices, there were nevertheless sufficient grounds for the Commission to find more similarities than differences in general between the production of these two types of televisions. This conclusion is supported by the requirement of all televisions that they have tuners, intermediate frequency amplifiers, audio processing circuitry, color separation circuitry, speakers, a display device, housing, user controls, power source and antennas.

 Finally, although plaintiffs have placed great emphasis on the relatively small size of the LCD screen, the Commission was well within its discretion in finding screen size to be an insufficient basis upon which to make the product distinction requested. Furthermore, the Commission was justified in taking into account information that a significant effort was underway by Japanese producers to make LCD TVs with larger screen sizes.

For all these reasons the Court finds that the Commission's determination that LCD TV,s did not constitute a different and separate like product from television receivers generally, was supported by substantial evidence. It follows that the basic determination of changed circumstances, originally thought to justify the commencement of a review, did not in fact exist. It further follows that the Commission was justified in not reaching the ultimate issues regarding material injury or threat thereof and consequently these issues are not reached by the Court.

For the reasons given above it is the decision of the Court that plaintiffs' motion for judgment on the administrative record be, and the same hereby is, denied.