**A. HIRSH, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 89–06–00366.**

United States Court of
International Trade.

May 9, 1990.

Susman & Associates, Barbara A. Susman, Chicago, Ill., for plaintiff.

Lyn M. Schlitt, Gen. Counsel, James A. Toupin, Asst. Gen. Counsel, George Thompson, U.S. Intern. Trade Com'n, Washington, D.C., for defendant.

## OPINION

RESTANI, Judge:

 Following the court's instructions on remand in *A. Hirsh, Inc. v. United States*, 14 CIT ——, 729 F.Supp. 1360 (1990) (*Hirsh I*), the International Trade Commission (ITC) filed its determination on February 12, 1990, setting forth its reasons for dismissing a request for section 751(b), 19 U.S.C. § 1675(b) (1988), changed circumstances review of an affirmative determination in *Natural Bristle Paint Brushes from the People's Republic of China,* 51 Fed.Reg. 4,662 (1986). The decision before the court involves the initial step in a two-step process under section 751(b) for reviewing an affirmative determination on the basis of changed circumstances. *See Hirsh I,* 14 CIT at ——, 729 F.Supp. at 1363. *See also Citizen Watch Co., Ltd. v.*

*United States*, 14 CIT ——, 733 F.Supp. 383, 387–88 (1990). Under this two step process ITC must first determine whether plaintiff has met its burden of showing changed circumstances sufficient to warrant a review. Accordingly, where a plaintiff has not met its burden at the initial stage by presenting adequate facts to demonstrate sufficient circumstances to warrant initiation of a section 751(b) review, ITC may decline to initiate the process after stating its reasons therefor. *See Hirsh I*, 14 CIT at ——, 729 F.Supp. at 1363 (*citing* 19 C.F.R. § 207.45(3) (1989); *Avesta AB v. United States*, 12 CIT ——, 689 F.Supp. 1173, 1175 & 1181 (1988)).

In its February 12, 1990 remand determination ITC concluded that a changed circumstances review was not warranted because the improved conditions described in plaintiff's request for review were attributable to the antidumping order. ITC also found that potentially important factors raised by plaintiff were not supported by the evidence submitted. Such factors included the non-existence of the segment of the domestic industry said to compete with relevant Chinese imports and the supplanting of those imports by other imports following imposition of the antidumping order.

In its briefs following remand [1] plaintiff claims that ITA wrongly discounted its data on the supplanting of Chinese imports by Taiwanese and Korean imports, overemphasized its claims with regard to non-existence of a competing domestic chip brush industry, and ignored the interplay between the various changes and the backdrop of an essentially "healthy" industry.

### Discussion

■ The first factor to be considered is the health of the domestic industry. No one claims that the domestic industry is in death throes or even that it is injured. Plaintiff provided ITC some data obtained from the American Brush Manufacturers Association indicating that certain economic ratios had improved from 1985 to 1987. The ratios do not indicate significant steady, across the board improvements, although some profit increases are indicated. Request for Review at Addendum 4. In opposition to the request for review, petitioners in the original investigation alleged that "the domestic industry" remains in a static position and continues to be vulnerable. Paint Applicators Trade Action Coalition Comments to Request For Review at 2. Overall, a fair description of the industry is that it is fairly healthy but price sensitive and subject to cyclical fluctuations. *See Natural Bristle Paint Brushes from the Peoples Republic of China*, USITC Pub. No. 1805 at A-7—A-9 (1986) (*Final Determination*). Because improved health of the domestic industry and avoidance of an injured condition is the hoped-for outcome of an unfair trade order based on a threat of injury finding, the improvement in condition cited by plaintiff is of little consequence as an isolated fact in terms of whether review is warranted. Nonetheless, the health of the domestic industry is, at least, relevant as a background upon which to consider other factors. *See American Permac, Inc. v. United States*, 831 F.2d 269, 275–76 (Fed.Cir.1987), *cert. dismissed* 485 U.S. 901, 108 S.Ct. 1067, 99 L.Ed.2d 229 (1988).

■ The next factors to be considered are alleged decreases in Chinese import inventories and rises in U.S. price. These effects are no more than are to be expected from an order which is intended to eliminate unfair low pricing. Thus, such effects do not aid plaintiff here.

■ Of potential interest, in connection with other factors,[2] is plaintiff's allegation

---

1. The court grants plaintiff's motion to file a reply brief.

2. Plaintiff also argued in its petition that exchange rate fluctuations since imposition of the order had changed in such a manner as to make renewed importation of natural bristle paint brushes from China "significantly more expen- sive." Request for Review at 14. Plaintiff maintained that the Commission has recognized in the past that currency fluctuations which make products more expensive to import can be the basis for a negative determination. *Id.* (*citing Portable Electric Typewriters from Japan*, 40 Fed.Reg. 27,079, 27,080 (1975)). In its petition plaintiff submitted no data to show that ex-

that China's shift to a market economy will give it greater incentive to raise prices up to or above cost, which may make Chinese brushes non-competitive. Request for Review at 13–18 & Addenda 1–3. Putting aside the factual premises related to price, ITC on remand found that plaintiff had not supported its allegation that this industry was affected by economic and political changes in China.[3] Presumably, evidence would exist of a change of the relevant sector of the Chinese economy to a market-based approach. Plaintiff's allegations in this regard were too general to aid it significantly.

■ Turning to the two most important changes claimed by plaintiff, the first is non-existence of a competing domestic industry. Request for Review at 8 & Plaintiff's Objections to the U.S. International Trade Commission's Remand Determination at 10 n. 5. Apparently, in 1984 most Chinese imports were in the low end chip brush category. *Final Determination* at 12. In its original determination ITC found the existence of a significant domestic chip brush industry. *Id.* at A–17—A–18. ITC also found drastically rising imports, capacity to both increase and shift production, and movement toward higher quality brushes. *Id.* at 11–13. Plaintiff has not provided any information to counteract either ITC's basic finding of existence of a competing domestic industry or the related findings. Therefore, the non-existence of a competing domestic industry cannot be said to be a changed circumstance which would warrant review in this case.

■ Plaintiff's best supported argument, and the one that is addressed least well by ITC, is its claim that Taiwanese and Korean imports have supplanted Chinese imports to no ill effect.[4] In fact, it appears that Taiwanese imports have surpassed previous Chinese imports. Compare Request for Review at Addendum 7 with *Final Determination* at A–29. The thrust of plaintiff's argument is that the domestic demand is absorbing the high influx of brushes. The result claimed is a non-injured and non-threatened domestic industry. Essentially, plaintiff attempts to use the supplantation argument to disprove ITC's "prediction of harm." This is a somewhat unusual approach as will be discussed *infra*.

As a preliminary matter, it must be observed that there is considerable doubt as to whether demand is up greatly or whether imported synthetic brushes, which according to plaintiff are more durable than natural brushes, are being inventoried. Taiwanese brushes were largely synthetic at the time of the final determination. *See Final Determination* at A–29. There is

---

change rate fluctuations had indeed made importation of natural bristle paint brushes prohibitive. Furthermore, *Portable Electric Typewriters* on which plaintiff relies did not involve a previous affirmative determination. That determination was based on market conditions which arose *independently* of any artificial import restraints. *See id.* at 27,080. As a point of information the International Trade Administration recently found that "the renminbi is not internationally convertible and the government imposes tight controls on foreign exchange earned through exporting." *Final Determination of Sales at Less Than Fair Value; Certain Headwear From the People's Republic of China*, 54 Fed.Reg. 11,983, 11,984 (1989). Tight controls suggest a lack of wide ranging fluctuation. This finding was made despite the establishment of "currency swap centers." *Id.* at 11,984–85.

3. In an unrelated report to the United States Trade Representative regarding foreign investment barriers, ITC recently documented that "China remains committed to the basic princi-

ples of a planned socialist economy." *See Foreign Investment Barriers or Other Restrictions that Prevent Foreign Capital from Claiming the Benefits of Foreign Government Programs*, USITC Pub. No. 2212 at 5–3 (1989).

4. ITC's difficulty may be with plaintiff's ambiguous or shifting argument. Originally plaintiff claimed that natural bristle brushes from Taiwan and Korea supplanted Chinese brushes. Request for Review at 12–13 & 21. But see more general statement at 8. Plaintiff's supporting data were overbroad with respect to natural bristle brushes and were minimized by ITC for this reason. *In re Dismissal of Request for Institution of a Section 751(b) Review Investigation; Natural Bristle Paint Brushes from the People's Republic of China (ITC Remand Determination)* at 9–10. Plaintiff now protests that the broad data involve "like product" and that both natural and synthetic brushes from Taiwan and Korea supplanted Chinese imports. Plaintiff's Reply to Defendant's Response to Plaintiff's Objections at 4.

no reason to believe they are the more perishable natural bristle type now. Furthermore, the aforementioned factual dispute is more pertinent to the question of whether non-Chinese imports are threatening the U.S. industry; it does not address directly whether the new imports disprove ITC "prediction of harm," as plaintiff alleges. No data are provided to demonstrate that aggregate Taiwanese, Korean, and Chinese imports are substantially greater now than they were in 1984–85. Such facts might be relevant to the issue of whether ITC's "prediction of harm" was disproved by the fact of supplanting imports, although this factor would not be conclusive. It is too simplistic to assume that just because some large quantity of imports *not* found to be sold at less than fair value (LTFV) does not injure, that *a fortiori* ITC's threat analysis with regard to LTFV imports is incorrect.

In past cases ITC has considered the supplanting of imports from one country by those from another in deciding to initiate a changed circumstances review. *See e.g. Birch Three–Ply Door Skins From Japan*, 47 Fed.Reg. 14,978 (1982). Usually, however, this factor is considered in connection with evidence of disappearance of the competing domestic industry following imposition of an order. That is, if the domestic industry cannot fill the gap occasioned by the antidumping order, but rather, other foreign imports do, the purpose of the order is not being fulfilled.[5] Therefore, plaintiff's supplantation argument is not very persuasive as long as there is no evidence of decline of the competing domestic industry to insignificant levels. By themselves supplanting imports do not demonstrate lack of threat or, as plaintiff might phrase it, failure of the "prediction of injury."

China apparently is in a unique position with regard to source of natural bristles, capacity, exporting trends, ability to shift production, and the need to export to the United States, because of action taken against Chinese imports in Canada and because of import restraint agreements with Australia and the European Community. *Final Determination* at 12–13. *Compare Television Receiving Sets From Japan*, 46 Fed.Reg. 32,702 (1981) (refusing to modify an antidumping order because of the presence of similar factors). None of these factors was demonstrated to have evaporated since the final determination was issued. Therefore, there is no reason to assume Chinese imports would not reassert themselves if the order were lifted.

Contrary to plaintiff's assertion, the court believes ITC did consider plaintiff's allegations as a whole and did not ignore relevant background data, much of which are not supportive of plaintiff's position. As stated by the court in *Avesta AB v. United States*, 12 CIT ——, 689 F.Supp. 1173 (1988) "a request for review of an affirmative injury determination is premised on an underlying finding of dumping, and therefore does not begin on a 'clean slate.' ... Absent changed circumstances sufficient to warrant review, the outstanding antidumping order should not be disturbed." *Id.* at ——, 689 F.Supp. at 1182 (Citation Omitted). Despite plaintiff's assertions following ITC's remand determination, ITC's determination reflects adequately its consideration of plaintiff's contentions.

Accordingly, ITC's determination that changed circumstances do not warrant a review is sustained.

### JUDGMENT

This case having been submitted for decision and the Court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

IT IS HEREBY ORDERED: that the determination of the International Trade Commission is affirmed.

---

**5.** It may be that this was ITC's reason for emphasizing the existence of the domestic chip-brush industry and related findings.