**A. HIRSH, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**and**

**Paint Applicators Trade Action Coalition (PATAC), Defendant–Intervenor.**

**Court No. 89–06–00366.**

United States Court of
International Trade.

Jan. 17, 1990.

---

Susman & Associates, Barbara A. Susman, Chicago, Ill., for plaintiff.

Lyn M. Schlitt, Gen. Counsel, James A. Toupin, Asst. Gen. Counsel, Washington, D.C., George Thompson, U.S. Intern. Trade Com'n, for defendant.

Miller, Canfield, Paddock and Stone, Charles R. Johnston, Jr. and Doreen M. Edelman, Washington, D.C., for defendant-intervenor.

## OPINION

RESTANI, Judge:

In this action plaintiff, A. Hirsh, Inc., challenges the United States International Trade Commission's (ITC) determination summarily denying plaintiff's request for review, based on changed circumstances, of the Commission's final affirmative determination under 19 U.S.C. § 1673d(b) (1988) that plaintiff's goods threatened an industry in the United States with material injury. *See Natural Bristle Paint Brushes from the People's Republic of China,* 51 Fed.Reg. 4662 (1986). In that determination the Commission found that the threat of material injury was caused by imports of natural bristle paint brushes from the People's Republic of China (PRC) at less than fair value (LTFV). Plaintiff's request under 19 U.S.C. § 1675(b) (1988) for review of that determination was filed on February 28, 1989.[1] Thereafter ITC requested comments to ascertain whether the review investigation should be commenced. *Natural Bristle Paint Brushes From the People's Republic of China; Request for Comments Concerning the Institution of a Section 751(b) Review Investigation,* 53 Fed.Reg. 9496 (1988). Following receipt of

various comments, ITC, on May 18, 1989, dismissed summarily plaintiff's request that a review investigation be instituted stating only:

> After consideration of the request for review and the responses to the notice inviting comments, the Commission has determined, pursuant to 19 U.S.C. 1675(b) [and] the rule [of] 19 CFR 207.45, that the request does not show changed circumstances sufficient to warrant institution of a review investigation, regarding natural bristle paint brushes from the People's Republic of China.

*Dismissal of Request for Institution of a Section 751(b) Review Investigation; Natural Bristle Paint Brushes From the People's Republic of China,* 54 Fed.Reg. 21491 (1989). ITC provided no further reasoning or analysis.

In its CIT RULE 56.1 motion for judgment on the record before the agency, plaintiff states that ITC's dismissal of its petition was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law because ITC failed to state the facts and legal conclusions to support its decision to deny plaintiff's request. Plaintiff also argues that ITC's decision was improper, because plaintiff demonstrated to ITC a reasonable presence of changed circumstances sufficient to warrant review of the original antidumping determination.

In its petition for review plaintiff asserted the following to support its view that the circumstances had changed warranting ITC to inquire further:

(a) the Commission's predictions as to the imminence of threat were erroneous, and in fact never materialized;

(b) there has been a rapid decline in Chinese paintbrush inventories in the United States to the point that such inventories virtually no longer exist;

(c) the U.S. paintbrush industry is healthy and the threat perceived not only

---

1. 19 U.S.C. § 1675(b)(1) (1988) provides in relevant part: "Whenever the ... Commission receives ... a request for review of ... an affirmative determination made under section 1673d (b) ... of this title, which shows changed circumstances sufficient to warrant review of such determination, it shall conduct such a review after publishing notice of the review in the Federal Register."

failed to materialize, but it is now clear that revocation of the original dumping order would not cause the domestic industry material harm or the threat thereof;

(d) statistical data show that there has been and there continues to exist no threat of price suppression;

(e) Chinese paint brushes are, in fact, less competitive price-wise in comparison with other imports within the U.S. market, regardless of the application of a dumping order;

(f) the fundamental change in the PRC's economy in its shift from a non-market to a market economy warrants initiating of a review investigation;

(g) Revocation of the subject antidumping order will pose no threat of harm.

Plaintiff's Complaint at 2.

In response to plaintiff's 56.1 motion, the government maintains (1) that the Commission correctly determined not to institute a review investigation because the only "changed circumstances" alleged in the request for review were either irrelevant or legally insufficient, and (2) that in this circumstance the Commission's general legal conclusion was the only statutorily required "reasoning."

## DISCUSSION

■ It is by now established that any reviewable determination requires a reasoned basis. *See American Lamb Co. v. United States*, 785 F.2d 994, 1004 (Fed.Cir. 1986) (*citing* S.REP. NO. 249, 96th Cong., 1st Sess. at 252 (1979)). *See also Carlisle Tire and Rubber Co. v. United States*, 5 CIT 229, 232–33, 564 F.Supp. 834, 837

(1983); *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 31–2, 102 S.Ct. 38, 41–42, 70 L.Ed.2d 23 (1981); *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450–51, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978). Failure of the decision-maker "to provide the court with the basis of its determination precludes the court from fulfilling its statutory obligation on review." *Industrial Fasteners Group v. United States*, 2 CIT 181, 190, 525 F.Supp. 885, 893 (1981), *aff'd* 710 F.2d 1576 (Fed.Cir.1983). Under this standard, although ITC is allowed wide latitude in its decision-making in this area, it is not exempt from articulating its reasoning. "Many choices of ITC involve 'discretionary' considerations, but the choices generally must be explained so that the reviewing court may discern the path of reasoning which led to the final outcome." *Asociacion Colombiana de Exportadores de Flores v. United States*, 12 CIT ——, 704 F.Supp. 1068, 1071 (1988). *Cf. Matsushita Electric Industrial Co., Ltd. v. United States*, 750 F.2d 927, 932–33 (Fed.Cir.1984); *Avesta AB v. United States*, 12 CIT ——, 689 F.Supp. 1173, 1181 (1988).

■ In the instant case ITC failed to articulate the reasons for its particular application of law; it merely recited uninformative statutory language. Without an articulation of reasons the court cannot ascertain whether or not ITC's decision was arbitrary, capricious, or otherwise not in accordance with law.[2]

---

**2.** 19 U.S.C. § 1516a(b)(1) (1988) sets forth the standard for judicial review of requests for determination review made under 19 U.S.C. § 1675(b). That subsection provides that "[t]he court shall hold unlawful any determination, finding, or conclusion found (A) in an action brought under paragraph (1) of subsection (a) of this section, to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ..."

19 U.S.C. § 1516a(a)(1) states in relevant part: Within 30 days after the date of publication in the Federal Register of—

(B) a determination by the Commission, under section 1675(b) of this title, not to review a determination based upon changed circumstances ...
an interested party who is a party to the proceeding in connection with which the matter arises may commence action in the United States Court of International Trade by filing concurrently a summons and complaint, each with the content and in the form, manner, and style prescribed by the rules of that court, contesting any factual findings or legal conclusions upon which the determination is based.

■ While some may argue that 19 U.S.C. § 1675(b) (1988) does not provide clearly for a statement of reasons supporting ITC's decision in this type of situation, the fact that judicial review is provided for in 19 U.S.C. § 1516a indicates that a statement of reasons is required. The court agrees with defendant that not all determinations under the antidumping laws require findings of fact, but a statement of reasons, at least, must contain specific legal conclusions reflecting a comprehensible rationale. Furthermore, the regulations referred to by ITC in its decision specifically require a statement of reasons. 19 C.F.R. § 207.45(3) (1989) states that "the request [for a review of an order based on changed circumstances] will be dismissed and a notice of the dismissal published in the FEDERAL REGISTER *stating the reasons therefor*" if ITC concludes there are no factors sufficient to warrant a review. *Id.* (emphasis supplied). Whether or not ITC's decisions are based on factual determinations or simply legal conclusions (defendant asserts the latter applies here), the court must determine whether the decision is a reasonable outcome under the standards applicable under the statute. As the statutory language of section 1675(b) is general, the court has attempted to determine what standards apply.

Explaining the applicable legal standard the *Avesta* court noted that given the prior history of such a case,[3] the party seeking review bears the initial burden of showing the existence of changed circumstances sufficient to warrant a review, but it need not establish that the crucial factors that led to the affirmative determination do not exist. *Avesta*, 689 F.Supp. at 1181.[4] The *Avesta* court also stated the petitioner must support its allegations with specific facts, and the agency may weigh evidence. *Id.* Finally, *Avesta* indicated that a "rea-

sonable indication" standard does not apply. *Id.* at 1175. The court concludes from these various statements, which were derived after consideration of the entire statutory scheme, that, in order to obtain a review, plaintiff must present facts which, when weighed against the other facts presented, would convince a reasonable decision-maker that a full investigation is necessary to establish whether or not changed circumstances have obviated the need for the order in its present form.

When making its changed circumstances determination in the past under the general statutory standard, ITC has looked at two core factors to make its initial determination whether to grant or deny the petition to review—(1) import pattern following imposition of its order and (2) market conditions. ITC has denied requests when the import pattern has shown, for example, that (1) imports to the United States had increased on a value basis; (2) there had been no decrease of imports through a purchase of local manufacturing facilities; (3) the decrease in the volume of production was attributable to the order; or (4) petitioner's assertion of a change of technology was based on "merely a continuation of a trend" which was discussed in ITC's investigation resulting in the imposition of the order. *Stainless Steel Plate From Sweden*, 50 Fed.Reg. 43,613, 43,614 (1985). *See also Drycleaning Machinery From West Germany*, 47 Fed.Reg. 6119 (1982).

In addition, when looking at market conditions, ITC has declined to review its determination, based on changed circumstances, when it was shown that (1) there was an established domestic United States industry which benefited from the market conditions created by the order; or (2) there had been a restructuring of the United States market and the importer's domestic market attributable to the order imposed and not

---

3. As stated in *Matsushita*, 750 F.2d at 932, the review does not operate on a "clean slate," that is, an affirmative determination based on a finding of injury or threat thereof, is in place.

4. *Avesta* at 1182 also quotes *Matsushita* to the effect that it must be shown that the antidumping order may be revoked without injury to the domestic industry. That, of course, is the standard applicable to the full review. In *Avesta*

this statement was also made in the context of a discussion of a particular changed circumstance. If the statement can be read to conflict with the exposition of the legal standard applicable at this stage found in the earlier portion of *Avesta*, such earlier general explanation would appear to be the more precise, and it is found to be applicable here.

to other factors. *Stainless Steel, supra* at 43,614.

Further understanding of the term "changed circumstance" may be gleaned from instances in which requests for review on such basis were approved. In those instances, ITC also looked primarily at import patterns and market conditions since imposition of the order. In the context of import patterns, ITC looked to see whether (1) they had changed generally; (2) there had been a change in competition between the foreign source and the domestic industry; (3) the United States sales price of imports supplied by the entity on whom the order was imposed was higher than the price of comparable products; (4) the market share of the foreign producer had been taken over by other foreign suppliers; or (5) the foreign source had built or purchased domestic facilities causing a reduction in imports. *Drycleaning Machinery From West Germany,* 49 Fed.Reg. 23,-461, 23,462 (1984) & 49 Fed.Reg. 32,692 (1984); *Birch Three–Ply Door Skins From Japan,* 47 Fed.Reg. 14,978 (1982); *Salmon Gill Fish Netting of Manmade Fibers From Japan,* 46 Fed.Reg. 42,219 (1981) & 46 Fed.Reg. 51,675 (1981). *Cf. Television Receiving Sets From Japan,* 46 Fed.Reg. 32,702 (1984) (analyzing some of these factors in the context of an actual review).

As to changed circumstances in market conditions which warranted a review in the cited cases, ITC looked at whether (1) there was a change in the competition between the entity subject to the order and any segment of the domestic industry protected from material injury by the order; (2) there was a decline in imports unassociated with the dumping order; (3) there was a decline in United States production which resulted from a lack of United States manufacturers who could produce a competitive product or counterpart because of a change in technological development; (4) there was a change in technological development which led to the importation of a new generation of products; (5) there was no significant United States production of the product since imposition of the order or United States production had moved offshore; (6) there was no significant United States

manufacture of the product comparable to the one upon which the order was imposed; or (7) there was an increase in domestic demand which could not be satisfied by domestic United States producers.

In comparison, plaintiff's request for review asserted that ITC's predictions of a threat of material injury never materialized. Plaintiff asserted further that paint brush inventories had rapidly declined and, were ITC's order to be removed, because of the competitive nature and price sensitivity of the market, a harmful increase in Chinese natural bristle paint brush imports would not result. In addition, plaintiff pointed out that China's market position had been supplanted after the order was imposed by imports from other countries, such as Taiwan and South Korea. Despite these increased imports, however, plaintiff maintained that the domestic natural bristle paint brush industry had suffered no adverse reaction because domestic United States demand for these brushes appeared to be particularly high.

Plaintiff also averred that the specific market for the brushes imported from China prior to the imposition of the order, namely low quality chip brushes, had been filled by imports from Taiwan. Indeed, plaintiff argued that the brushes at issue had not been produced in significant quantities in the United States since the early 1970s. In addition, plaintiff stated that exchange rate fluctuations and world market prices indicated that Chinese brushes would not be cost competitive in the United States were the order to be actually revoked. Finally, plaintiff pointed to the "profound" changes in China's economy since imposition of the order which could warrant reconsideration of the order. In light of these factors plaintiff maintained that no LTFV sales would result from a revocation of the order.

The court does not find whether any of the factors alleged by plaintiff were or were not supportive of a determination to commence a review in this case. But the court cannot find that as a matter of law ITC may never consider any of these factors in deciding whether to commence a

review. This is essentially what defendant requests when it states that the reasons offered by plaintiff were so facially deficient that no reasoned decision was necessary.

The government, in its brief in opposition to plaintiff's motion for judgment on the administrative record, found it "noteworthy" that ITC had "discussed its interpretation of the requirements" of Section 1675[ (b) ] in "numerous proceedings." *See* Government's Brief at 30. Two of the legal conclusions supposedly determinable from past cases are (1) that plaintiff must establish that the order itself did not create the "changed circumstances" and (2) that ITC may not reexamine conclusions drawn by the Commerce Department in its corollary investigation. If those are indeed ITC's general legal conclusions it remains ITC's administrative duty to say so, to apply its legal conclusions to the particular facts of the petition before it and to articulate *sufficient* rational reasons for its denial of review, in order for the court to be able to fulfill *its* obligations.[5]

While defendant's counsel in a lengthy explication of the record requests that the court defer to ITC's decision because plaintiff failed to specify sufficient facts to warrant a review, the court can not rely on agency counsel's *post hoc* rationalizations interpreting the administrative record. *Atcor, Inc. v. United States*, 11 CIT 148, 154, 658 F.Supp. 295, 300 (1987) (*citing ILWU Local 142 v. Donovan*, 10 CIT 161, 164, Slip.Op. No. 86–28, 1986 WL 30016 (March 13, 1986)). There is no way to ascertain whether counsel's legal reasoning is or is not that of the body charged with making the determination, whether it reads the facts in the administrative record the same way as counsel does now, or even if the agency had any reasons at all at the time it issued its determination. What counsel asks is that the court substitute counsel's

reasoning for that of the agency. The court will not do this, anymore than it would substitute its own judgment for ITC's.

The court's review of plaintiff's petition and a comparison of the factors articulated therein with the factors deemed relevant by ITC in various cases in which it previously granted (or even denied) review, lead the court to conclude that plaintiff has asserted enough of a claim of "changed circumstances sufficient to warrant a review" so that a reasoned decision addressing the claim must be provided.

Accordingly, the court finds that ITC's failure to state its reasons for denying plaintiff's request for Section 1675(b) review in the instant proceeding was contrary to law and the court remands this case with directions that ITC make a reasoned decision and state its reasons, so they may be reviewed if plaintiff remains dissatisfied with the resolution or explanation. ITC has twenty-five days to file its determination with the court.

---

**5.** These two "legal conclusions" appear to be discernible, at least in part, from the cases discussed herein. See, e.g., *Stainless Steel Plate From Sweden, supra* at 43,614 the determination underlying *Avesta*, wherein ITC found that it must be provided "persuasive reasons" why low import levels were not caused by the order at is-

sue. Although these principles may have some applicability here the court is not prepared to find that they apply in their broadest form to every fact situation. It seems unnecessary to discuss at this point situations in which one or the other may not be a correct statement.