**A. HIRSH, INC., Plaintiff–Appellant,**

**v.**

**The UNITED STATES, Defendant–Appellee,**

**and**

**Paint Applicators Trade Action Coalition, Defendant.**

**No. 91–1013.**

United States Court of Appeals, Federal Circuit.

Nov. 6, 1991.

Barbara A. Susman, Susman & Associates, Chicago, Ill., argued, for plaintiff-appellant. With her on the brief, was Julianne S. Gran.

George W. Thompson, Office of Gen. Counsel, U.S. Intern. Trade Com'n, Washington, D.C., argued, for defendant-appellee. With him on the brief, were Lyn M. Schlitt, Gen. Counsel, James A. Toupin, Asst. Gen. Counsel and Andrea C. Casson, of counsel.

Charles R. Johnston, Jr., Miller, Canfield, Paddock & Stone, Washington, D.C., for amicus curiae Wooster Brush Co.

Before MICHEL, Circuit Judge, BENNETT, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

MICHEL, Circuit Judge.

A. Hirsh, Inc. ("Hirsh") appeals the order of the Court of International Trade ("trade court") denying its request for attorney fees and costs under the Equal Access to Justice Act ("EAJA" or the "Act"), 28 U.S.C. § 2412(d)(1)(A) (1988), and sanctions under Fed.R.Civ.P. 11 against defendant Paint Applicators Trade Action Coalition ("PATAC"), some of its members, and its counsel. *A. Hirsh, Inc. v. United States*, 747 F.Supp. 723 (Ct. Int'l Trade 1990). Because the trade court correctly applied the Act's "prevailing party" standard for awarding attorney fees and costs, and because the trade court did not abuse its discretion by not finding sanctionable conduct under Rule 11, we affirm.

## BACKGROUND

Hirsh is a major importer of natural bristle paint brushes from the People's Republic of China. In February 1988, Hirsh petitioned the International Trade Commission ("ITC" or "Commission") to review its affirmative antidumping determination in *Natural Bristle Paint Brushes from the People's Republic of China*, USITC Pub. 1805, Inv. No. 731–TA–244 (Final) (Jan. 1986).

In its final determination, the Commission found that the domestic industry producing natural bristle paint brushes was threatened with material injury due to the "less than fair value" imports of such paint brushes from China, basing its conclusion on a series of factors. *Id.* at 11–14. Following the Commission's final affirmative determination, the Commerce Department issued an antidumping order placing a duty on Chinese natural bristle paint brushes. 51 Fed.Reg. 5580 (Feb. 14, 1986).

Hirsh, in its petition for review of the final determination, alleged that circumstances had changed, most notably that the threat to domestic industry never materialized and that imports of the subject paint

brushes "were brought to a virtual halt, and were replaced by imports from other sources."[1] Therefore, Hirsh contended, the Commission should reconsider its determination.

The Commission, in response to Hirsh's petition, published a request for comments on whether to initiate a review based on the grounds stated by Hirsh. 53 Fed.Reg. 9496 (Mar. 23, 1988). After considering the petition and the comments submitted by interested parties, the Commission determined that "the request does not show changed circumstances sufficient to warrant institution" of a review investigation. *Dismissal of Request for Institution of a Section 751(b) Review Investigation; Natural Bristle Paint Brushes from the People's Republic of China,* 53 Fed.Reg. 18,-912 (May 25, 1988).

On February 28, 1989, Hirsh filed another request for review, again on the grounds of changed circumstances.[2] The second review petition noted that the first request had been "rejected" by the Commission, but did not specify any deficiency in the reasons given by the Commission for its rejection. The Commission published a request for comments concerning Hirsh's second request for a review investigation. 54 Fed.Reg. 11,822 (Mar. 22, 1989). According to the Commission, four comments were received in support of the request, but none presented any facts or arguments that "had not already been set forth in the request." Gov't. Br. at 7.

After consideration, the Commission determined that "the request does not show changed circumstances sufficient to warrant institution" of a review investigation regarding natural bristle paint brushes from the People's Republic of China, and dismissed Hirsh's petition. *Dismissal of Request for Institution of a Section 751(b) Review Investigation; Natural Bristle Paint Brushes from the People's Republic of China,* 54 Fed.Reg. 21,491 (May 18, 1989).

Following the Commission's dismissal, Hirsh filed a summons and complaint against the Commission in the trade court. In its complaint, Hirsh alleged that the Commission had failed to adequately explain its rationale for the dismissal, and further contended that the Commission "abused its discretion in dismissing [Hirsh's] petition which established sufficient facts to show a reasonable appearance of changed circumstances that warrant review." Complaint at 2, ¶ 12. Before the trade court, Hirsh sought a remand to the Commission "for re-consideration and for statement of facts and reasons bearing a rational nexus to its conclusions." Hirsh Brief for Review of Administrative Determination Upon Agency Record at 34. The Commission opposed reconsideration or remand, arguing that "the review request failed as a matter of law to allege changed circumstances, and that a legal conclusion was all that was required in dismissing" Hirsh's petition. Gov't. Br. at 9.

The trade court, however, held that the Commission was required to provide a more detailed explanation for its conclusion that Hirsh's allegations of changed circumstances were insufficient to warrant a review investigation. *A. Hirsh, Inc. v. United States,* 729 F.Supp. 1360 (Ct. Int'l Trade

**1.** Hirsh's petition was made under 19 U.S.C. § 1675(b)(1) (1988), which provides in relevant part:

Whenever the ... Commission receives ... a request for the review of ... an affirmative determination made under section 1671c(h)(2) ... of this title, which shows changed circumstances *sufficient to warrant* a review of such determination, it shall conduct such a review after publishing notice of the review in the Federal Register. (Emphasis added.)

**2.** The petition alleged the following changed circumstances: (1) the domestic industry was in

an uninjured condition; (2) as a consequence of the imposition of the antidumping order, imports of natural bristle paint brushes from China have been brought to a virtual halt; (3) Chinese import inventories have been depleted; (4) because of price increases, Chinese paint brushes are no longer competitive in the United States market and have not caused the price suppression feared by the Commission; and (5) because the Chinese economy is increasingly market-oriented, Chinese vendors have an incentive not to sell below cost. Gov't.Br. at 6.

1990) (*"Hirsh I"*). According to the trade court:

> [i]n the instant case ITC failed to articulate the reasons for its particular application of law; it merely recited uninformative statutory language. Without an articulation of reasons the court cannot ascertain whether or not ITC's decision was arbitrary, capricious, or otherwise not in accordance with law.

*Id.* at 1362 (footnote omitted). Therefore, the trade court concluded, the Commission's dismissal was contrary to law and remand was necessary. *Id.* at 1365. The Commission was ordered by the trade court to "make a reasoned decision and state its reasons, so they may be reviewed if [Hirsh] remains dissatisfied with the resolution or explanation" and to present its views to the court within 25 days. *Id.* The trade court did not, however, grant Hirsh's alternative request for relief—that the Commission be required to *reconsider* its original rejection of the petition for a review investigation.

On February 22, 1990, the Commission submitted to the trade court a more detailed explanation of its conclusion that Hirsh's allegations were insufficient to "warrant" a review investigation. Hirsh disputed the Commission's conclusions and filed a memorandum, requesting that the Commission be directed to institute a review investigation.

The trade court subsequently affirmed the Commission's decision not to institute a review investigation, and dismissed the action. *A. Hirsh, Inc. v. United States*, 737 F.Supp. 1186 (Ct.Int'l Trade 1990) (*"Hirsh II"*). The court noted that:

[c]ontrary to [Hirsh's] assertion, the court believes ITC did consider [its] allegations as a whole and did not ignore relevant background data, much of which are not supportive of [its] position.

*Id.* at 1190.

During the pendency of the trade court litigation, a group of American manufacturers of natural bristle paint brushes filed a motion to intervene and an answer to the complaint,[3] alleging that they were "interested parties" within the definition of 19 U.S.C. § 1677(9)(A) (1988) and 28 U.S.C. § 2631(k) (1988). According to the motion, the proposed defendant-intervenors were "interested parties (*i.e.*, members of the petitioner [before ITC]) to the proceedings before the International Trade Commission and the Department of Commerce." In addition, the manufacturers argued that they were "entitled to intervene as a matter of right" under the relevant statutes because they "may be adversely affected by the outcome of th[e] action." As a result, they sought to intervene both individually and collectively.

In response to the manufacturers' motion, Hirsh filed a 25–page memorandum, opposing intervention on the grounds, *inter alia*, that not all the individual companies were members of the original petitioner and that not all are "U.S. manufacturers" of natural bristle paint brushes. Therefore, according to Hirsh, the manufacturers are not "interested parties" as contemplated by the statute and do not have standing.

The manufacturers voluntarily withdrew their motion,[4] and on September 8, 1989, filed a second motion for leave to intervene

---

**3.** The proposed individual defendant-intervenors were Polymers, Inc., Charles E. Green & Son, Inc., The Wooster Brush Company, Ketema, Inc., Rae Metal Products Co., Inc., Joseph Lieberman and Sons (Bestt/Liebco), PPG Industries, Inc., and Rubberset Company. All claimed to have been American manufacturers of natural bristle paint brushes and were, at the time of filing the original motion, PATAC members.

**4.** The effectiveness of the manufacturers' attempt to voluntarily withdraw their first motion is disputed by Hirsh. On October 27, 1989, 11 days after the manufacturers' second motion

was granted, the trade court, by a different judge, denied Hirsh's motion to oppose intervention under the initial motion. Hirsh charges that "[t]he principal significance to this Order is that it highlights the fact that the Court did not recognize [the manufacturers' counsel's] letter dated September 7, 1989 as an effective withdrawal of [the original motion]." Hirsh Br. at 6. However, in *A. Hirsh, Inc. v. United States*, 747 F.Supp. 723 (Ct.Int'l Trade 1990), the trade court explicitly recognized that the denial was on the basis of mootness and that the individual intervenors' requests were withdrawn. *Id.* at 724 n. 1.

as the Paint Applicators Trade Action Coalition ("PATAC"), an "interested" trade organization. On October 16, 1989, the trade court granted PATAC's motion.

Following the court's decision in *Hirsh II,* Hirsh filed a motion under EAJA for attorney fees and costs of $83,577.85 and a request for sanctions under Rule 11 against PATAC, some of its members, and its attorney. The trade court rejected the EAJA fee request because, it concluded, Hirsh was not a "prevailing party" as required by the Act. *A. Hirsh, Inc. v. United States,* 747 F.Supp. 723, 725 (Ct. Int'l Trade 1990) ("*Hirsh III*"). According to the court, its remand in *Hirsh I* was not based on the "merits of applicant's petition." *Id.* at 725. Rather, the remand was necessary so that the court could "ascertain the basis for the denial." *Id.* The court then concluded that since the Commission's dismissal was ultimately affirmed, Hirsh "obtained nothing from the defendants," *id.* (quoting *Hewitt v. Helms,* 482 U.S. 755, 761–62, 107 S.Ct. 2672, 2676–77, 96 L.Ed.2d 654 (1987)), and denied Hirsh's request for Rule 11 sanctions against PATAC, some of PATAC's individual members, and PATAC's attorney.

On appeal, Hirsh argues that for purposes of the Act it was a prevailing party because the Commission was required to articulate reasons for its denial, which was one form of relief requested in its original action. Hirsh also seeks review of the trade court's denial of Rule 11 sanctions against defendant-intervenors PATAC, some of its individual members, and its attorney. The Wooster Brush Company ("Wooster"), which sought to intervene as an individual before the Commission and is a member of PATAC, filed an *amicus curiae* brief urging affirmance of the trade court's Rule 11 decision. In addition, Wooster asserts that Hirsh's appeal as to the Rule 11 denial was frivolous and that *it* is therefore entitled to an award of attorney fees and costs from this court under 28 U.S.C. § 1927 against Hirsh's counsel.

## DISCUSSION

### I.

■ Under the Equal Access to Justice Act, attorney fees and costs may only be awarded to a "prevailing party." 28 U.S.C. § 2412(d)(1)(A).[5] A "prevailing party" "typical[ly] ... succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Austin v. Department of Commerce,* 742 F.2d 1417, 1419 (Fed.Cir.1984) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (further citations omitted)). Ascertaining the "prevailing party" in litigation requires the court to "look to the substance of the litigation to determine whether an applicant has *substantially* prevailed in its position, and not merely the technical disposition of the case or motion. In effect, substance should prevail over form." *Devine v. Sutermeister,* 733 F.2d 892, 898 (Fed.Cir.1984) (emphasis in original) (citations omitted).

Although a determination whether a party did or did not prevail for purposes of attorney fees under EAJA is reviewed *de novo* by this court, we believe that the trade court's decision should receive at least some deference. The trade court was well situated to assess whether or not Hirsh prevailed before it: The trade court judge presided over arguments, reviewed the pleadings, and observed the posturing between parties from inception to conclusion of the litigation. And finally, the trade court is the best interpreter of the meaning of its own prior opinions in this case.

After an "examination of [Hirsh's] filings and arguments before" it, the trade court concluded that Hirsh's "primary in-

---

5. The Act provides that:
   a court shall award to a prevailing party other than the United States fees and other expenses, ... incurred by that party in any civil action ... including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
   28 U.S.C. § 2412(d)(1)(A) (1988).

terest in the litigation was to obtain a review, and ultimately reversal, of an earlier ITC administrative determination." *Hirsh III*, 747 F.Supp. at 725. Hirsh counters that the trade court misunderstood its position, and that while it would have welcomed a reversal of the Commission's affirmative dumping determination, it "challenged *only* the agency's action of refusing to provide reasons for its dismissal of its petition seeking institution of § 751(b) review for changed circumstances." Hirsh Br. at 11 (emphasis added).[6]

Despite Hirsh's characterization here of its position below, Hirsh did not seek "only" an articulation of reasoning from the Commission. In its complaint, Hirsh clearly asked for an order directing the Commission to "reconsider" its original dismissal or, alternatively, to state reasons for its dismissal of Hirsh's request. Complaint at 3. That request, the Commission contends, coupled with Hirsh's "strenuous objections to the Commission's remand determination" demonstrated that Hirsh "had one goal in this litigation: forcing the Commission to institute a review investigation." Gov't. Br. at 17–18.

In response, Hirsh argues that even if it did seek both types of relief, this court should treat decisions issued by the trade court not as steps toward a single ultimate resolution, but, for purposes of its EAJA request, as individual and separate pieces of litigation. Therefore, Hirsh argues, while in *Hirsh II*, it may have failed in its challenge to the reconsideration decision, it unquestionably prevailed in *Hirsh I*. Hirsh's position is apparently based on the fortuity that the trade court issued separate opinions in each phase of the litigation. However, simply because a court makes a remand decision during the proceedings in a case, a party cannot, on that basis alone, claim a significant victory. Nor does issuance of separate interlocutory decisions, ruled on from the bench or in an opinion,

allow parties to fragment the litigation into separate pieces, each with its own winner and loser.

Although we recognize that a "prevailing party" is not limited "to a victor only after entry of a final judgment following a full trial on the merits," *Austin*, 742 F.2d at 1419 (citation omitted), winning on a particular point or ground, even if it may result in permanent change in government practice or may clarify muddled law, does not necessarily entitle a party to EAJA fees. On review, we must look at the claimed "victory" in the context of the litigation as a whole to discern whether the party has achieved the substantive relief it sought. *See Schultz v. United States*, 918 F.2d 164, 166–67 (Fed.Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1686, 114 L.Ed.2d 80 (1991). From this vantage, while Hirsh may have won a procedural battle, it plainly lost the war on the merits.

■ The Commission correctly contends that the remand ordered was simply an interim procedural win with no lasting substantive benefit to Hirsh. Procedural victories not addressing the merits of the private litigant's claim against the government do not support EAJA fee awards. *Austin*, 742 F.2d at 1420. As this court has noted, "if a party wins on a purely procedural issue which results in a remand, then this has not made him a 'prevailing party.'" *Id.* However, as Hirsh notes, on occasions when some entitlement to relief on the merits accompanies an interlocutory or procedural victory, then attorney fees under a fee award act may be appropriate. *Hanrahan v. Hampton*, 446 U.S. 754, 757, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980). We are ultimately unconvinced, though, by Hirsh's attempts to paint the trade court's *Hirsh I* ruling as anything more than a purely procedural triumph.

It is clear from the language of *Hirsh I*, without even resort to the trade court's

6. At oral argument, Hirsh's counsel again depicted this appeal as solely "involv[ing] the challenge and reversal of this ITC policy of summary dismissals" of section 751(b) review requests. We agree with the government that

Hirsh's misleading characterization of its posture before the trade court is "ironic" given that Hirsh accused another attorney in these proceedings of frivolous conduct. Gov't.Br. at 17, n. 10.

thorough hindsight analysis of it in *Hirsh III*, that Hirsh's claimed "victory" was merely procedural. As the trade court explained, articulation of reasons by the Commission was needed so that *it* could "determine whether the decision is a reasonable outcome under the standards applicable under the statute." *Hirsh I*, 729 F.Supp. at 1363. Any benefit to Hirsh would have been purely incidental, insubstantial, temporary, and limited to whatever tactical advantage it may have bestowed on Hirsh's counsel in preparation of an appeal to the trade court.

Even assuming, *arguendo*, that Hirsh had initially only sought an explanation of the Commission's reasons, we might still not have agreed that it succeeded on the merits with its procedural victory. On the record here, however, it is without question—despite Hirsh's disingenuous representations before us—from its complaint, the pleadings before the trade court, and the language of *Hirsh I*, that Hirsh sought more, *i.e.*, for the trade court to order the Commission to reconsider its denial of a review investigation. As the trade court judge recognized, its:

> decision in *Hirsh I* was *not based on the merits* of applicant's petition. Rather, the court found that ITC acted contrary to law by not articulating reasons for its denial of applicant's petition. The court therefore remanded the case so that it could ascertain the basis for the denial. Once ITC's reasons were articulated, the court affirmed ITC's denial.

*Hirsh III*, 747 F.Supp. at 725 (emphasis added). *See, e.g., McGill v. Secretary of Health and Human Servs.*, 712 F.2d 28, 32 (2d Cir.1983), *cert. denied*, 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984) (Remand "did no more than move [plaintiff] one step closer to a final determination of the merits of [its] claim."). Therefore, because Hirsh was not a "prevailing party" under EAJA, it is not entitled to attorney fees and costs.[7]

## II.

### A.

■ Hirsh also contends that the trade court committed reversible error in not granting its request for Rule 11 sanctions against PATAC, certain individual members of PATAC, and PATAC's attorney (hereinafter, unless otherwise indicated, collectively "PATAC"). The trade court found "no basis in law or fact" to support Hirsh's application against the trade association and, as to individual members and its attorney, noted that there was "insufficient explanation or segregation of the request [against them], which would appear ill-founded in any case." *Hirsh III*, 747 F.Supp. at 724 n. 1. Court of International Trade Rule 11, which is identical to Fed. R.Civ.P. 11, states that:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney.... The signature ... constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction....

A trial court's denial of Rule 11 sanctions is reviewed for abuse of discretion, *New Idea Farm Equip. Corp. v. Sperry Corp.*, 916 F.2d 1561, 1568, 16 USPQ2d 1424, 1430 (Fed.Cir.1990), and we are mindful that "no advantage ... would result if this Court were to conduct a second-hand review of the facts from the trial court level, as '[the trial court has] a better grasp of what is acceptable trial-level practice among litigat-

---

7. Because the trade court did not err in its EAJA determination, we need not address Hirsh's counsel's contention that she was entitled to enhanced attorney fees.

ing members of the bar than will appellate judges.'" *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 873 (5th Cir.1988) (quoting *Eastway Constr. Corp. v. New York*, 637 F.Supp. 558, 566 (E.D.N.Y.1986)) (footnote omitted).

Rule 11 is designed to "deal with the problem" of "dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." Fed.R.Civ.P. 11 (advisory notes). The Rule requires that:

> [t]here must be "reasonable inquiry" into both fact and law; there must be good faith (that is, the paper may not be interposed "to harass"); the legal theory must be objectively "warranted by existing law or a good faith argument" for the modification of existing law; and the lawyer must believe that the [pleading] is "well grounded in fact".

*Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir.1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988).

To support its position that the trade court abused its discretion by not imposing sanctions, Hirsh initially cites a litany of procedural errors by PATAC and its attorney all relating to the filing of the original motion to intervene both as a trade group and as individual companies. However, we are unconvinced, as was the trade court, by Hirsh's assertions that PATAC somehow acted recklessly or in bad faith to burden Hirsh and the trade court with "needless expense and delay" by filing its motion. *See, e.g., Cooter & Gell v. Hartmarx Corp.*, — U.S. —, 110 S.Ct. 2447, 2457, 110 L.Ed.2d 359 (1990) ("Baseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay.").

According to Hirsh, it suffered harm because only:

> [a]fter extensive effort and expense, Hirsh determined that there was no other way to interpret the papers filed by [PATAC's counsel], but that they had

been filed on behalf of individual companies, rather than a trade association.... Hirsh Br. at 4–5.

However, the caption of the motion itself explicitly stated the names and capacities of the parties seeking intervention. In any event, simply because a party invests a substantial amount of time and resources in fending off a potential adversary, a pleading is not necessarily sanctionable. Indeed, as PATAC's counsel notes, the intensity that Hirsh displayed below in opposing the first motion, including a lengthy response, is indicative that the pleading had, at a minimum, some basis in law and fact.

Nor can we agree with Hirsh that PATAC or its attorney participated in a "continuing pattern of baseless pleadings." On the contrary, the only PATAC pleadings we have located in the record that are cited by Hirsh are the original motion, dated August 15, 1989, and the second motion, dated September 8, 1989. The first was withdrawn and the second granted, hardly indicating a "continuing pattern" designed to "harass Hirsh."

Finally, Hirsh ascribes great weight to the alleged "fact" that PATAC attempted to withdraw its motion, but was unable to effect the withdrawal since the trade court still ruled on Hirsh's motion opposing the first motion. Hirsh argues that this is evidence of PATAC's "bad faith." However, this argument is more misleading than persuasive. As the trade court recognized, after Hirsh filed its opposition to the motion and the Commission conferred with PATAC's counsel, the manufacturers withdrew their original motion and filed a second motion seeking to intervene as of right solely as a trade association. That motion was granted on October 16, 1989. On October 27, 1989, the trade court denied Hirsh's motion opposing intervention as moot. Hirsh contends that the withdrawal must have been ineffective because the court ruled on its motion *opposing* intervention. Clearly, though, since the motion being ruled on concerned the individual members and not solely the trade association, the only reasoning that would support the trade court's denial for mootness was if the withdrawal of the first motion *was*

effectuated.[8]

Therefore, despite Hirsh's arguments to the contrary, we conclude that the trade court did not abuse its discretion by refusing Rule 11 sanctions against PATAC.

### B.

■ Before this court, Wooster, *amicus curiae*, asserts that the segment of Hirsh's appeal challenging the trade court's Rule 11 denial is frivolous, and, since that is the only segment to which it responds, asks that it be awarded its attorney fees and costs under 28 U.S.C. § 1927 (1988).[9] Wooster, although a member of PATAC, intervenor before the trade court, was not and is not itself a party. It may nevertheless have wanted to respond to protect its financial interests as a member of PATAC, since a reversal could possibly have led to an assessment of members to pay the attorney fees PATAC would then be ordered to pay. Had this court reversed the trade court's Rule 11 decision as Hirsh sought, Wooster might even have become directly responsible for attorney fees and costs as itself a target of the Rule 11 motion. Moreover, since on appeal the Rule 11 issue no longer concerned the Commission, it was not addressed in the Commission's brief. The motivation of Wooster to file an amicus brief is thus understandable. Moreover, Hirsh's counsel should have expected PATAC or its individual members to want to respond. Thus counsel was on notice, a fact that may bear on any intent requirement under section 1927.

Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The issues before us regarding application of section 1927 to the facts of this case include whether the appeal of the Rule 11 decision violates section 1927 and, if so, whether Wooster's costs were "because of such conduct."

■ Wooster contends that, as it challenges the trade court's Rule 11 decision, this appeal is "unmeritorious and frivolous" and therefore Hirsh's counsel should be sanctioned. Wooster Br. at 7. As this court has repeatedly stated, an appeal is frivolous as filed if "the judgment by the tribunal below was so plainly correct and the legal authority contrary to appellant's position so clear that there really is no appealable issue." *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1579, 17 USPQ2d 1914, 1918 (Fed.Cir.1991). *See also In re Perry*, 918 F.2d 931, 935 (Fed. Cir.1990) ("When an appeal is a 'complete loser,' most of which is 'patently groundless,' sanctions should be imposed....") (citations omitted); *Synan v. Merit Sys. Protection Bd.*, 765 F.2d 1099, 1102 (Fed.Cir. 1985) ("This appeal was frivolous because there was no possible basis for reversing the board's decision."). This is such a case.

The trade court explicitly found that there was no "basis in law or fact" to sanction PATAC for seeking to intervene, especially in light of the fact that the trade organization qualified to intervene as of right, and, as to the individual members and their counsel, there was "insufficient explanation or segregation of the request, which would appear ill-founded in any case." *Hirsh III*, 747 F.Supp. at 724 n. 1. Despite the trade court's unambiguous analysis, Hirsh presents nothing more on appeal than precisely the same muddled argument previously found to be without "basis in law or fact." *Id. See Mays v.*

---

8. In any event, the effectiveness of the withdrawal is not logically related to any recklessness or intent to harass in filing.

9. Wooster also seeks Rule 11 sanctions against Hirsh in this appeal. However, Rule 11 is applicable only in federal trial court proceedings and not on appeal. *See Cooter & Gell v. Hartmarx Corp.*, — U.S. —, —, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990). In addition to impos-

ing sanctions under section 1927, we can impose sanctions under Fed.R.App.P. 38 or a court's "inherent powers" to "achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, — U.S. —, —, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (quoting *Link v. Wabash RR. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962)).

*Chicago Sun–Times*, 865 F.2d 134, 138 (7th Cir.) (sanctions imposed for "merely restat[ing] arguments that the [lower] court properly rejected") (citation omitted), *cert. denied*, 493 U.S. 900, 110 S.Ct. 259, 107 L.Ed.2d 209 (1989). No attempt has been made to specify how the trade court abused its discretion in arriving at its conclusion; instead Hirsh quibbles with what it believes to be the insufficient weight the trade court accorded its "evidence." [10] *Refac Int'l, Ltd. v. Hitachi, Ltd.*, 921 F.2d 1247, 1256, 16 USPQ2d 1347, 1354 (Fed.Cir. 1990) (failure to explain how the lower tribunal erred or to present clear and cogent arguments for reversal deemed frivolous). Nor has Hirsh cited any case with similar or analogous facts in which Rule 11 sanctions were imposed.

An appeal such as this which is obviously frivolous when filed can constitute conduct "multipl[ying] the proceedings ... unreasonably and vexatiously": Since no appeal should have been taken on this issue in the first place, the very existence of such an appellate issue may be unreasonable and vexatious, unnecessarily consuming the time and resources of the court as well as others embroiled in continuing litigation of what long ago should have been a closed matter. *See, e.g., Braley v. Campbell*, 832 F.2d 1504, 1513 (10th Cir.1987) *(en banc)* ("At the appellate level the bringing of the appeal itself may be a sanctionable multiplication of proceedings."). Particularly, where, as here, third parties were likely to seek leave to file a response to protect their financial interests in part of an appeal, and that part is patently frivolous, counsel was on notice, and we must seriously consider invoking section 1927 because as to them Hirsh's filing could be considered both unreasonable and vexatious. *Cf. McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir.1981) (failure to exclude from appeal individual opponents as to whom there is no basis for appeal is sanctionable).

Appellate rulings should not chill attorneys in proper cases or on proper issues

from filing appeals, and this court is mindful that sanctions should not be imposed "lightly." *Julien v. Zeringue*, 864 F.2d 1572, 1576, 9 USPQ2d 1554, 1557 (Fed.Cir.), *cert. denied*, 493 U.S. 917, 110 S.Ct. 276, 107 L.Ed.2d 256 (1989). But we can neither ignore nor excuse the conduct of Hirsh's counsel in this case. Attorneys must restrain themselves from seeking review when there is clearly no merit to their position. The trade court warned Hirsh that its original sanctions request against PATAC had "no basis in law or fact"—the touchstone of frivolity. *Hirsh III*, 747 F.Supp. at 724 n. 1. *See, e.g., Octocom Sys., Inc. v. Houston Computer Servs., Inc.*, 918 F.2d 937, 943, 16 USPQ2d 1783, 1788 (Fed.Cir.1990) ("[A]n appeal is frivolous where 'no basis for reversal in law or fact can be or is even arguably shown.' ") (quoting *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1554 (Fed.Cir.1983)). Despite the trade court's admonition, Hirsh appealed the sanctions decision as to PATAC and the other targets of its Rule 11 motion. Moreover, it continued to press only the same groundless argument before this court. Although the portion of Hirsh's appeal asserting entitlement to an EAJA award may have had some arguable merit, the independent portion urging that the trade court abused its discretion in denying Rule 11 sanctions did not. By unnecessarily widening its net on appeal, Hirsh violated section 1927 by "multipl[ying] the proceedings ... unreasonably and vexatiously." Had this appeal been limited to the EAJA issue, it would have been pointless for Wooster to appear here, and this aspect of the litigation would have been concluded.

Under the circumstances of this case, there can be no genuine issue concerning constitutionally required notice and opportunity to be heard. Hirsh's counsel was explicitly informed by the opinion of the Court of International Trade that her motion for sanctions under Rule 11 was utterly meritless. Moreover, Hirsh's counsel is

---

**10.** Hirsh's conduct is especially egregious since the "evidence" that Hirsh complains was improperly weighed is primarily the Court of International Trade's own decisions and interpretations of law.

deemed to be aware of the penalties and standards of section 1927 and cases construing it, which thus provide additional notice. Finally, Hirsh's counsel was explicitly notified in Wooster's brief of the request for sanctions under section 1927. *See Julien,* 864 F.2d at 1575–76, 9 USPQ2d at 1556–57 (section 1927 sanctions imposed where attorney, despite repeated warnings, repeatedly failed to meet time deadlines imposed by rules and orders of the court). She therefore received all the notice to which she was entitled, constitutionally or otherwise.

Hirsh's opportunities to be heard before our court and to demonstrate colorable merit included Hirsh's principal brief, reply brief, and oral argument. In none of these circumstances could Hirsh demonstrate an arguable factual or legal basis for a conclusion that, in declining to award Rule 11 sanctions, the Court of International Trade abused its discretion.

Nothing that Hirsh's counsel could say now could redeem the failure to cite supporting law or fact on those three occasions. Hirsh's counsel is not entitled to yet another opportunity to respond. *See In re Perry,* 918 F.2d at 934 ("[A]ll of Perry's relevant conduct appears in the record, in Perry's briefs, and in Perry's oral argument. An oral hearing would thus not develop or illuminate new relevant factual issues and would not aid this court.") (citing *Hill v. Norfolk & Western Ry.,* 814 F.2d 1192, 1201 (7th Cir.1987)). Indeed, to require additional briefing or a hearing in cases such as this one "would impose on the opposing party and on the court an even greater burden in dealing with a frivolous appeal and entirely defeat the purpose of Rule 38." *Toepfer v. Department of Transp.,* 792 F.2d 1102, 1103 (Fed.Cir. 1986) (citing *Hyde v. Van Wormer,* 474 U.S. 992, 106 S.Ct. 403, 88 L.Ed.2d 355 (1985), in which the Supreme Court awarded damages under its rule 49.2 without a hearing). As the Seventh Circuit has said:

we believe absolutely that an attorney ordered to pay money as a sanction for the filing of a frivolous suit or appeal is entitled to due process of law, and that this entitlement includes an opportunity for a hearing if a factual question coneeming [sic] the propriety of sanctions is raised.... But obviously the right to a hearing ... is limited to cases where a hearing would assist the court in its decision. *Where,* as in this and most Rule 38 cases, *the conduct that is sought to be sanctioned consists of making objectively groundless legal arguments in briefs filed in this court, there are no issues that a hearing could illuminate.*

*Hill,* 814 F.2d at 1201–02 (citations omitted) (emphasis added). While our court in *Toepfer* and the Seventh Circuit in *Hill* were discussing whether a hearing is needed in the context of Rule 38, the same considerations apply under section 1927. Besides, in this case taking the appeal was frivolous under Rule 38, as well as violating section 1927 by unreasonably and vexatiously multiplying the proceedings. In short, Hirsh's counsel has had all the opportunity to be heard on how she can justify appealing the discretionary Rule 11 decision that is needed by the court or required by the Constitution.

However, when section 1927 speaks to the "excess costs, expenses, and attorneys' fees reasonably incurred ...," ordinarily the statute is referring to burdens a party imposes on the opposing party. Here, Wooster is not a party but an amicus. Nor was it a party below. While it initially sought to intervene below, it promptly withdrew its motion in favor of the motion of PATAC to intervene, which was ultimately granted. PATAC, however, while a party below, chose not to appeal. As a separate entity, Wooster cannot succeed to PATAC's status as a party below, in any event.

As a target of the Rule 11 motion, presumably Wooster could have intervened below or even here and become a party. But it did not.

As an amicus, Wooster appears before our court solely as a volunteer. It therefore cannot be said that Wooster's legal costs were "incurred because of" Hirsh's "conduct" in taking the appeal on the Rule 11 issue. These costs were caused instead

by Wooster's own conduct in voluntarily becoming an amicus.[11] Logically, the concept of "excess" legal costs simply cannot apply to one who undertakes appellate litigation as a volunteer. Wooster's status as a volunteer in this appeal is all the clearer since had we reversed and had the trial court then imposed Rule 11 sanctions on Wooster, Wooster would thereby have become a party and would have had standing to appeal at that time as of right. In the absence of any authority, we conclude that even though bad faith, if required, can be imputed to Hirsh's counsel[12] and Hirsh's appeal of the Rule 11 issue did violate section 1927, the section's remedy cannot be applied to Wooster. Therefore, Wooster's request for sanctions under section 1927 must be denied.

## CONCLUSION

The Court of International Trade did not err in determining that Hirsh was not a "prevailing party" under the EAJA because Hirsh gained neither the substantive relief it requested nor any substantive benefit from the remand decision. In addition, the Court of International Trade did not abuse its discretion in denying Hirsh's request for Rule 11 sanctions against PA-TAC, some of its individual members, and its attorney since, as the Court of International Trade correctly held, there was no basis in law or fact for sanctions. Finally, that part of Hirsh's appeal challenging the Rule 11 denial was frivolous, unreasonable, and vexatious but Wooster's excess costs were not "because of such conduct" but because of its voluntary appearance as amicus. Therefore, under 28 U.S.C. § 1927, we cannot award to The Wooster Brush

Company its reasonable attorney fees and costs in this appeal as requested.

AFFIRMED.

11. Courts have applied section 1927 so as to require that the costs be necessarily incurred because of opposing counsel's misconduct. Thus, the court may "only award fees and sanctions for expenses incurred in responsive or defensive actions." *In re Itel Securities Litigation,* 596 F.Supp. 226, 234 (N.D.Cal.), *aff'd,* 791 F.2d 672 (9th Cir.1984), *cert. denied,* 479 U.S. 1033, 107 S.Ct. 880, 93 L.Ed.2d 834 (1986). Similarly, under the cases it is *parties* who are entitled to the benefit of section 1927. *See, e.g., Pfister v. Delta Air Lines,* 496 F.Supp. 932, 939 (N.D.Ga.1980). Wooster has cited no case in

which an amicus was awarded costs under section 1927, and we are not aware of any.

12. Bad faith is required for section 1927 sanctions in some but not all circuits. *See, e.g., Wages v. IRS,* 915 F.2d 1230, 1235 (9th Cir. 1990), *Williams v. Giant Eagle Markets, Inc.,* 883 F.2d 1184, 1191 (3d Cir.1989), *United States v. Associated Convalescent Enterprises, Inc.,* 766 F.2d 1342, 1346 (9th Cir.1985). *But see Braley,* 832 F.2d at 1512 (10th Cir.).